CARDER L. STONE et al., Respondents, *v.* THE STATE OF
NEW YORK, Appellant.

Facts established and adjudged against B., in an action brought by A.,
cannot be availed of as evidence in favor of C., in an action brought by
him against B., unless there is privity between A. and C. in respect to
the subject in controversy.

Upon the trial of a claim before the Board of Claims to recover damages
for alleged negligence, in order, as claimed, "to show the liability of
the state," the claimant was allowed to give in evidence the record of an
award made by said Board in favor of one L., for damages alleged to
have been caused by the same negligence; the claimants here were not
parties to that proceeding, and were neither privies in law or estate
with L. *Held,* error.

The state, in constructing the Genesee Valley canal, caused the channel
of a river to be changed. In order to protect the adjoining lands, a
guard bank was constructed parallel with the new channel; this the state
did not keep in repair, and, in consequence, during an extraordinary
freshet, it was broken through at a point where it crossed the original
channel; the water followed this channel, overflowed its banks, reached
and injured claimants' lands. While it appeared that the overflow
would not have occurred had the guard bank been kept in repair
and up to its original height, there was no evidence that the claimants'
lands were overflowed to any greater extent than they would have been
if the new channel had not been made. *Held,* that no liability was
established; that the state was under no obligation to maintain the
guard bank to protect lands which would have been flooded to the same
extent had the improvement not been made.

More than seven years prior to the accruing of the claim, the state had,
under and pursuant to legislative enactments, abandoned and sold said
canal and the lands connected therewith, and ceased to have any interest
therein. By the act authorizing the abandonment (§ 13, chap. 404, Laws
of 1877), it is provided that "no person or corporation shall have any
claim against the state by reason of the abandonment." *Held,* that the
claim did not relate to damages from the canals of the state, "or other
matter or thing connected with the canals," within the meaning of the
statutes giving to said Board jurisdiction (§ 13, chap. 205, Laws of
1883; § 1, chap. 321, Laws of 1870), and so, it had no power to make
an award in claimants' favor.

The state is only answerable before the Board of Claims in respect to
matters it has consented to submit to its jurisdiction.

*It seems,* in the absence of statutory authority extending the jurisdiction
of courts to the determination of claims against the state, an appeal to
the legislature is the only remedy of the citizen against it, whether the

claim arose in consequence of wrongful acts of state officers or agents, or upon contracts made under authority of, or in behalf of the state.

(Argued March 22, 1893; decided April 11, 1893.)

Appeal from an award of the Board of Claims, made June 24, 1891, in favor of claimant.

The facts, so far as material, are stated in the opinion.

*S. W. Rosendale, Attorney-General,* for appellants. There was no liability on the part of the state. The injuries complained of were caused directly by a freshet or flood of extraordinary character, and were not the result of any cause against which it was the duty of the state to guard, nor which could reasonably be anticipated. (*Bellinger* v. *N. Y. C. R. R. Co.,* 23 N. Y. 42; *Moyer* v. *N. Y. C. R. R. Co.,* 88 id. 351; *Losee* v. *Buchanan,* 51 id. 476; *Reiss* v. *N. Y. S. Co.,* 128 id. 163; Washb. on Ease. 259, § 3; *Sheldon* v. *Sherman,* 42 N. Y. 484; *Bedloe* v. *N. Y. F. D. D. Co.,* 112 id. 263; *Halpin* v. *P. Ins. Co.,* 118 id. 165.) The claim should have been dismissed, for the reason that there was no proof offered that the injury sustained by the claimants was caused by the change in the channel of the river, made by the state in 1839 or 1840. (*Bedloe* v. *N. Y. F. D. D. Co.,* 112 N. Y. 263; *Halpin* v. *P. Ins. Co.,* 118 id. 165.) The court erred in allowing in evidence the award made by the Board of Claims, March 9, 1887, upon the claim filed by Thomas R. Leet, claimant, against the state of New York. (*Moore* v. *City of Albany,* 98 N. Y. 396; *Collins* v. *Hydorn,* 135 id. 320; *Belden* v. *State,* 103 id. 1; *McDonald* v. *State,* 127 id. 18.)

*E. E. Harding* for respondent. The state has assumed liability for damages in a case like this, by the act of 1870 (Chap. 321). (Laws of 1884, chap. 60, § 7; *Heacock* v. *State,* 105 N. Y. 248; *People ex rel.* v. *Thayer,* 63 id. 348; *S. M. Co.* v. *State,* 104 id. 562; *Benedict* v. *State,* 120 id. 228; *Sipple* v. *State,* 99 id. 284.) On the hearing before the Court of Appeals, in

such an appeal as this, only such questions shall be considered by the court as are raised by the notice of appeal, and as to all questions not raised by the notice of appeal it shall be presumed that sufficient evidence was given on the hearing to sustain the award. (Laws of 1883, chap. 205, §§ 10, 11 ; Laws of 1884, chap. 60, § 11 ; Laws of 1887, chap. 507, § 10.) The Court of Appeals has no power to review a finding of fact made by the Board of Claims. (*Splittorf* v. *State*, 108 N. Y. 212; *Bowen* v. *State*, Id. 166 ; *Perkins* v. *State*, 113 id. 660 ; *Maybee* v. *Avery*, 18 Johns. 354; Laws of 1887, chap. 507; § 10 ; *Sayer* v. *State*, 123 N. Y. 298.)

ANDREWS, Ch. J. This is an appeal from an award of the Board of Claims, made June 24, 1891, for the sum of $530, in favor of the claimants for damages caused by the overflow of the waters of Genesee river upon and over the farm of the claimants, in the town of Hume, Allegany county, on or about the 6th day of June, 1889.

The general facts found by the board and upon which the award is based, are stated in the award. It was found that the state in the years 1839 and 1840, while engaged in the construction of the Genesee Valley canal, caused the channel of the Genesee river in the towns of Hume and Caneadea, near the lands in question, to be changed, to avoid the winding course of the river, which ran a circuitous course of over two miles at this point, with a sluggish current. The new channel cut by the state was from 80 to 100 rods in length, and turned the flow of the water, which formerly ran a distance of two miles or over, in the old channel at this point, within the new channel so constituted. The change in the channel resulted in the water of the river flowing upon and washing away the adjoining land. The farm of the claimants, however, was not affected by the erosion, as it did not adjoin the new channel. It was also found that in order to protect the adjoining lands from damage, which it was foreseen would result from the change in the channel, the state constructed a guard bank parallel with the new channel, on the

north side thereof; that this bank was gradually undermined by the current running in the new channel during a period of more than thirty years; that the state negligently omitted to maintain it and keep it in repair, or to provide other protection against the overflow or washing away of the bank; that in June, 1889, the water in the new channel overflowed and ran over the land adjoining, and from thence on to the premises of the claimants, causing the damage specified; that at the time of the overflow complained of, there was a freshet greater than had occurred in that locality in many years, but that the water did not rise to within about four feet of the top of a portion of the guard bank then standing as originally constructed, and that the damages sustained by the claimants were not caused by the freshet, but were occasioned by the change in the channel and the negligence of the state in not maintaining and keeping in repair the guard bank, or providing other suitable protection against the overflow of the water.

The state has appealed from the award, and by the notice of appeal, the validity of the award is challenged as against law and evidence, and on the point of jurisdiction and for errors in the admission of evidence.

It is claimed on behalf of the state that the evidence conclusively establishes that the overflow of the river at the time in question was attributable to a freshet of unprecedented character operating over a wide territory, and that the presence of a guard bank at the point in question would not have prevented the overflow. It was the same freshet which caused the Johnstown disaster in Pennsylvania, and it was admitted by the claimants, on the hearing of the claim, that such a freshet had not occurred in the locality in question for twenty-five years, and it was conceded (upon offer of proof being made) that the Genesee on that occasion overflowed the country at a great number of places, and that the water in the Chemung at Elmira rose from twenty to twenty-eight feet above its ordinary stage, causing serious damage. Indeed, the violence of the floods caused by the June freshet of 1889 is matter of common history. But in view of the rule which

is made part of the statute regulating appeals from the Board of Claims, that only questions of law arising on the hearing of the claim are cognizable by this court upon an appeal from an award, with the single exception of the *quantum* of damages (Chap. 205, Laws of 1883, § 17), we cannot reverse the award upon the ground that there was no evidence that the guard bank, if it had been maintained as originally constructed, would not have prevented the overflow on the premises of the claimants.

But we are of opinion that there are several errors of law which require a reversal of the award.

The claimants at the hearing presented a record of an award made by the Board of Claims, March 9, 1887, upon a claim filed by one Thomas R. Leet against the state, " to show the liability of the state." The counsel for the state objected to the competency of the record as evidence in the case, stating the grounds in detail. The objection was overruled and an exception was taken, and the record was then read in evidence. The record showed that on March 9, 1887, the Board of Claims awarded to Thomas R. Leet the sum of $320 upon a claim originally filed by him June 29, 1870, before the Board of Canal Appraisers, and afterwards transferred to the Board of Claims, for damages sustained by him prior to that date, from the washing away of his land adjoining the channel of Genesee river in the towns of Hume and Caneadea in the county of Allegany, caused by the new direction and force of the current of the river, and the failure of the state to maintain proper and sufficient guard banks. This record was improperly admitted. The claimants in this case were not parties to that proceeding. They were neither privies in law or estate with Thomas R. Leet. The present claimants acquired their title to a part of the lands owned by them, in 1872, and to all prior to the award made in the former proceeding. So far as appears Thomas R. Leet never had title to the lands owned by the present claimants.

The doctrine is elementary that a judgment binds only parties or privies. A fact established and adjudged against

one party in an action by another party, is never evidence in favor of a different party in another litigation, although the the party against whom the fact was established in the prior action, is the same party against whom it is sought to be used in the subsequent action, unless, as has been said, there is privity between the two litigants in respect to the subject in controversy. (*Moore* v. *Albany*, 98 N. Y. 396, and cases cited.) The admission of this record is now sought to be justified on the ground that it was competent evidence of notice to the state of the defective condition of the guard bank. It was offered "to show the liability of the state," and the Board of Claims adopted several findings of fact material in this case, from the findings in that record which are supported by no proof independently of that record. Its admission was a material error.

Another error in the award arises out of the assumption that the damages sustained by the claimants resulted, as a legal conclusion, from the fact of the overflow and the omission of the state to maintain the guard bank in repair. Assuming for the present that a duty rested upon the state to maintain the guard bank, and that as originally constructed it would have retained the water within the new channel, the omission of this duty created a claim only in favor of such owners of lands overflowed, who were injured in consequence of the action of the state in changing the channel, and who except for this act would not have sustained a similar injury. It was shown that the guard bank was broken through at the point where it crossed the original natural channel of the river and that through this opening the water followed the original channel till it came to an embankment originally constructed across its course for the Genesee Valley canal, and now used by the Genesee Valley railroad, which embankment formed a dam, detaining the water for a time, but which was also carried away, and the water then continued to flow through the original channel, but overflowing its banks, until it reached the lands of the claimants. There is no evidence that the lands of the plaintiffs were overflowed to any greater

extent than they would have been if the new channel had never been made. One of the witnesses for the plaintiff stated: "I don't know if the water had gone through the old channel, but it might have gone over the land just as it did on the first of June." He further testified: "All the water did was to go in the line of the old channel, by breaking away the guard bank; then the railroad obstructs the old channel so it got around the old channel, so it broke through the railroad here, and came around and broke through at the lower end." It is not suggested in the evidence that the damming of the water by the railroad embankment, and its subsequent discharge after the embankment was broken through, increased the overflow on the claimants' land beyond what would have occurred if no embankment had been there. It must be assumed, we think, upon the evidence, that if no change in the natural situation had been made at any time by the state, the lands of the claimants would have been flooded to an equal extent as they were flooded. The history of the freshet as given by the witnesses, and the extensive flooding all along the line of the river, affords strong confirmation of this view. The straightening of the river did not cause the injury, and while it is possible that if the guard bank had been maintained in repair it would have confined the water to the new channel, the state was under no obligation to maintain it to protect lands which would have been flooded to the same extent if the improvement had not been made.

But there is a still more radical error in the award. The state is only answerable before the Board of Claims in respect to matters which it has consented to submit to its jurisdiction. The sovereign can be impleaded for the recovery of claims against it, only in the mode, and to the extent, and as to such matters as the legislature has authorized. In the absence of statutory authority extending the jurisdiction of courts to the determination of claims against the state, an appeal to the legislature is the only remedy of the citizen against the sovereign, whether the claim arose in consequence of wrongful acts of state officers or agents, or upon contracts made

under authority or in behalf of the state. (*Lewis* v. *State*, 96 N. Y. 71.) The jurisdiction of the Board of Claims to take cognizance of and adjudicate the claim now under review, if it exists, was conferred by section 13 of chap. 205 of the Laws of 1883, which transferred to, and vested in the Board of Claims, "all the jurisdiction and power to hear and determine claims against the state possessed by the Canal Appraisers." The jurisdiction of the Canal Appraisers, so far as it is now material, was defined by section 1, chap. 321 of the Laws of 1870, in these words: "Sec. 1. Jurisdiction is hereby granted to and conferred upon the Canal Appraisers to hear and determine all claims against the state, of any and all persons and corporations, for damages alleged to have been sustained by them from the canals of the state, or from their use and management, or resulting or arising from the negligence or conduct of any officer of the state having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals," etc.

The change in the channel of the Genesee river where the overflow in question occurred, was, according to the finding, made by the state in 1839 and 1840, while engaged in the construction of the Genesee Valley canal. Reference to the map produced on the argument shows the canal crossed the old channel of the river north of the new channel, and the evident purpose of the change was to protect the canal. Appropriations were made by the legislature from time to time for protecting the canal "against the encroachments of Genesee river," and this was the primary purpose of the guard bank. (See Laws of 1870, pg. 2140.) It is insisted that the claim now under review comes within the words in the act of 1870, allowing the adjudication of claims for damages sustained from the canals, etc., "or other matter or thing connected with the canals." It is very doubtful, we think, whether these words would at any time have authorized an adjudication of a claim for damages for not maintaining the guard bank. But, however this may be, the legislature, under constitutional authority, by chapter 404 of

the Laws of 1877, authorized the abandonment of the Genesee Valley canal on or after September 30, 1878, and the sale of the banks and prism of the canal for railroad purposes (§§ 1, 2, 3, 11). It was enacted by section 13 of the act, that " no person or corporation shall have any claim against the state for or by reason of the abandonment or discontinuance of the said canals or any of them." By act, chap. 326 of the Laws of 1880, further provision was made as to the sale of the canal in question, and the sale seems to have been consummated prior to 1882. (See chap. 219, Laws of 1882.) It thus appears that the state, more than seven years prior to the accruing of the claim in this case, had abandoned and sold the Genesee Valley canal and the lands connected therewith to a railroad corporation, and ceased to have any proprietary or other interest therein. Under such circumstances we think it impossible to maintain that the claim filed in this case related to damages from the canals, " or other matter or thing connected with the canals," and unless the claim was of this character, the Board of Claims had no jurisdiction. The Genesee Valley canal in 1889, had no existence. If any equitable claim exists for relief upon the facts disclosed in this record, the only remedy is by application to the legislature. We are not inclined to put a narrow construction upon statutes defining the jurisdiction of the Board of Claims, but to extend it to such a case as this would, we think, be judicial legislation.

Since the conclusion we have reached is decisive of the ultimate right involved, the award should be reversed and claim dismissed without granting a new hearing.

All concur, except MAYNARD, J., not voting.

Award reversed and claim dismissed.