No. 14,204.

CITY AND COUNTY OF DENVER *v*. PILO.
(79 P. [2d] 270)

Decided May 9, 1938.

Mr. Malcolm Lindsey, Mr. Glenn G. Saunders, Mr. Robert J. Kirschwing, for plaintiff in error.

Mr. Albert E. Sherlock, Mr. Don B. Oliver, Mr. Con K. O'Byrne, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The parties to this action are before us in reverse order of their appearance in the trial court and will be designated herein as plaintiff, and defendant or city. Plaintiff secured a verdict of $3,870 for damages to his crops of celery, beets and turnips, and to the grounds on which they grew, alleged to have been caused by defendant's negligence in excavating above and along a five foot pipe running into the South Platte river through a dyke, and in leaving the excavation open on Saturday afternoon with no intention of doing further work until the following Monday morning, during which interval flood waters coming down the river, the excavation being open, overflowed plaintiff's land. Judgment was entered on the verdict. The city seeks a reversal for alleged errors of law.

The facts are substantially as follows: September 9, 1933, plaintiff was the owner of a certain garden tract of land in Adams county on which he had growing approximately seven and one-half acres of celery, one acre of turnips and one and one-half acre of beets. This garden tract is located three-fourths of a mile north, and an

eighth of a mile east, of the point where the five foot pipe passed through the dyke. The land sloped from the pipe in a general northerly and slightly easterly direction. Certain maps were introduced as exhibits showing the natural low water channel of the South Platte river and the "official channel" of the South Platte river. While it does not clearly appear from the record what this official channel is, we think it does appear from the briefs of both parties that it is the channel of the river as laid out and confined within certain dykes pursuant to authority conferred by sections 8974 to 8977 C. L. 1921, '35 C. S. A., vol. 2, c. 53, §§6-9. These sections are as follows:

"§6. The city council of the City and County of Denver is hereby authorized and empowered to improve, change, straighten, widen, narrow, deepen or extend the channel of the South Platte river within the City and County of Denver.

"§7. The width, depth, course and dimensions of said channel shall be as now established or may hereafter be established by ordinance duly enacted by the council of the City and County of Denver, and said city and county shall have the power to acquire by purchase or condemnation all lands necessary to improve, straighten, widen, narrow, deepen or extend said channel, and the board of public works shall have exclusive control of the construction of said improvements.

"§8. The City and County of Denver is hereby empowered to extend and improve said channel beyond and outside the limits of the City and County of Denver whenever in the opinion of the council of said city and county, the extension and improvement of said channel beyond the boundary line of said city and county shall more effectually and advantageously accomplish the purpose and object of sections 6 to 9 of this chapter, and cause said improvement to be more beneficial to the inhabitants of the City and County of Denver and promote and protect the general health and general welfare.

"§9. The city council of the City and County of Denver may, and said council is hereby empowered, to enact and adopt ordinances for the purpose of preventing and removing obstructions in said channel or encroachments upon the same or polluting the waters thereof, and to in every manner control, regulate and protect said property, when improved in whole or in part as herein provided for, and provide for a penalty for the violation of any or all of said ordinances."

■ Having constructed certain storm sewers that obviated the necessity of the five foot pipe, above mentioned, through the embankment the city determined upon its removal and the substitution therefor of a smaller pipe containing a valve which when open would permit water to drain into the river, but when closed would prevent flood waters flowing down the river from backing up through the pipe. During the afternoon of September 9, 1933, the excavations were made in the dyke for the purpose of taking up the larger and putting in the smaller pipe. There is a conflict in the evidence as to whether the excavation was made the full length of the pipe or whether the face of the dyke was left intact; also as to whether the excavation was made by hand labor or with a steam shovel. The evidence being conflicting and the jury having returned a verdict for plaintiff we must, if necessary to support the verdict, assume that the excavation extended the full width of the embankment. The men ceased work on Saturday about 4:30 P. M. with the intention of returning and completing the substitution on the following Monday morning. During Saturday night a flood with a peak flow of 22,000 second feet came down the river. From the pipe to a distance of 150 feet down stream, the dyke was partially washed out, large quantities of water passed through the opening and, following the slope of the land, inundated plaintiff's garden tract to a depth of several feet, thus causing the damage of which complaint is made.

The city makes three contentions, all of which are based on appropriate assignments of error. If any one of these is legally sound it necessitates a reversal of the judgment.

The first contention is that the action of the city with respect to the South Platte river channel was for the purpose of protecting the city and its citizens, and not, as alleged by plaintiff in his complaint—which allegation was denied by the city in its answer—to protect the plaintiff or his land; that no duty to plaintiff rested on the city with respect to the improvement of the channel of the river or the maintenance of the improvements after making them, save and except that neither by the plan of the improvement nor by failure to maintain it may the city subject the plaintiff's land to greater burden or hazard from flood than that to which it was subject with the channel in its natural state; that the benefit to plaintiff by reason of the improvement and a continued maintenance of it was but incidental to the city's own objects and purposes; and that neither a failure to make the improvement, to maintain it, or to continue the plan in operation at all, was a violation of plaintiff's legal right and hence negligence cannot be predicated on any such failure.

We think this contention is sound. Nowhere in the record is there any evidence that the city agreed with plaintiff to make or maintain the improvement of the channel or that any consideration passed from plaintiff to the city for so doing. It clearly appears from the record that plaintiff's land was lower than the bottom of the pipe, and that the bottom of the pipe was near the bottom of the river. It appears from the exhibits and testimony that the river was confined in a channel for a long distance above the pipe. No elevations of the land on the south side of the river appear from the testimony or exhibits so the jury was unable to determine, even if such an issue had been raised, whether by reason of the dyke along the southerly side of the channel water was thrown on plaintiff's land which but for the interference with the channel

would have spread to south and east of the natural channel. There is undisputed testimony to the effect that plaintiff's land lies within the high water channel of the river and that this particular flood was the highest of which any record is available. Under such a situation the conclusion is inescapable that plaintiff's land would have been inundated if the channel of the river had been left in its natural state.

We think that the extent of the duty owed by the city to plaintiff was not to interfere with the natural flow of the river, either by the plan of improvement adopted, or by a failure so to maintain it that the flood burden on plaintiff's land would be greater than if the channel were left in a natural state. That it was greater by reason either of the improvement or failure to maintain it is not shown. Plaintiff in his brief says: ''We need not cite any authority in support of the proposition that when the legislature grants a privilege or charter to a municipality to perform a work, it is always with the understanding that it is to be exercised in such manner, where possible, as not to injure others by interfering with vested rights which would amount to the taking of private property without just compensation.'' If this is a correct statement of law it then follows that if there was no interference with plaintiff's vested rights he was not damaged by any act or inaction of the city. As we have pointed out, his vested right was to have his flood burden remain as nature had fixed it. Until he establishes that the city has increased it either by acts or omissions, no interference with a vested right is shown.

We have not failed to consider those cases holding that when a city, though not obligated in the first instance to do so, assumes to provide sewers, sidewalks and lighting, it must exercise reasonable care to keep them efficient up to the capacity or extent of the plan adopted. Examples of such cases are *Denver v. Rhodes,* 9 Colo. 554, 13 Pac. 729; *Oliver v. Denver,* 13 Colo. App. 345, 57 Pac. 729. These cases involve the rights of those within the munici-

pality, for whose benefit the improvements were made in the first instance, and who have a right for that reason to rely on their maintenance. That the improvement in question in this case was made for the protection of plaintiff's land is alleged, but the allegation is denied and the record is devoid of any testimony to support it.

The case most nearly in point with the one at bar, of any we have been able to find, is *Stone v. State,* 138 N. Y. 124, 33 N. E. 733, decided by the Court of Appeals of New York. The facts necessary to an understanding in that case sufficiently appear from the following quotation:

"Assuming for the present that a duty rested upon the state to maintain the guard bank, and that as originally constructed it would have retained the water within the new channel, the omission of this duty created a claim only in favor of such owners of land overflowed, who were injured in consequence of the action of the state in changing the channel, and who except for this act would not have sustained a similar injury. It was shown that the guard bank was broken through at the point where it crossed the original natural channel of the river and that through this opening the water followed the original channel till it came to an embankment originally constructed across its course for the Genesee Valley canal, and now used by the Genesee Valley railroad, which embankment formed a dam, detaining the water for a time, but which was also carried away, and the water then continued to flow through the original channel, but overflowing its banks, until it reached the lands of the claimants. There is no evidence that the lands of the plaintiffs were overflowed to any greater extent than they would have been if the new channel had never been made. One of the witnesses for the plaintiff stated: 'I don't know if the water had gone through the old channel, but it might have gone over the land just as it did on the first of June.' He further testified: 'All the water did was to go in the line of the old channel, by breaking away the guard bank; then the railroad obstructs the old channel so it got around the

old channel, so it broke through the railroad here, and came around and broke through at the lower end.' It is not suggested in the evidence that the damming of the water by the railroad embankment, and its subsequent discharge after the embankment was broken through, increased the overflow on the claimants' land beyond what would have occurred if no embankment had been there. It must be assumed, we think, upon the evidence, that if no change in the natural situation had been made at any time by the state, the lands of the claimants would have been flooded to an equal extent as they were flooded. The history of the freshet as given by the witnesses, and the extensive flooding all along the line of the river, affords strong confirmation of this view. The straightening of the river did not cause the injury, and while it is possible that if the guard bank had been maintained in repair, it would have confined the water to the new channel, the state was under no obligation to maintain it to protect lands which would have been flooded to the same extent if the improvement had not been made.''

We are not unmindful of the fact that the case of *Willson v. Boise City,* 20 Ida. 133, 117 Pac. 115, cited by plaintiff, seems to announce a doctrine contrary to that promulgated in *Stone v. State, supra,* but upon a close analysis of the facts it appears that the point involved in the Stone case and in the one here under consideration was not there presented for determination. In the Boise case the court said: ''It is argued by the city that the intervening act of the United States in erecting the retaining wall and preventing the water spreading out over the military reserve, and thus throwing the entire volume of water in the direction of the canal and respondent's premises, was the proximate cause of the injury, and that the city is therefore not liable. The weakness of this contention lies in the fact that the city had already assumed responsibility for the diversion of the stream from its natural channel, and it owed the same duty to the people along the original channel to prevent the water

thereafter flowing in that direction as it owed to the people along the artificial channel to protect them by the exercise of ordinary care and diligence to prevent the flooding and overflowing of their lands. The fact that a property owner repaired the wall so as to protect his property does not relieve the city of the primary duty which rested on it and which it owed to all the people.''

A reading of the whole case discloses that the city had changed the channel of the stream and built a canal to carry its waters through a part of the city not theretofore traversed by the river and that the United States government, whose barrack property previously in time of high water had been flooded, in reliance on the change, had raised and reinforced the city's dykes through the barrack grounds along the westerly side of the new channel, so that the entire flood was confined in the new channel. The plaintiff, a property owner on the easterly side of the channel, as a result had his lands flooded and sued the city for damages. The court sustained a recovery. On the facts the situation as to plaintiff was nothing more than a flood damage to him by reason of the city's interference with the original channel of the stream, resulting in throwing flood water onto his land where it naturally would not have gone. In the instant case, if plaintiff's land had abutted on the new channel as did the barrack property in the Boise case, and he had raised and reinforced the city's dyke to protect his own property so that it would not be overflowed, and thus the whole flood had been confined in the official channel and thereby a part of the city lower down on the stream had been flooded, then the situation presented would be analogous to that before the Idaho court. Here, another property owner so situated, under the holding in that case, could not be defeated in a suit for damages by a showing that if Pilo had not strengthened the dyke the water would have broken through at Pilo's land, flowed down the old channel, and thereby prevented the break further down the stream. *Willson v. Boise, supra,* is not, therefore, authority for

the proposition that if the flood had broken through at the old channel and passed down it, injuring a property owner outside the city who would have been injured to the same extent if there had been no interference with the channel, he might recover.

██ Counsel for plaintiff point out that the damage sued for in the instant case was caused by the same flood, passing through the same break in the levee, and alleged to have been caused by the same acts of the city, as was the damage involved in *City and County of Denver v. Talarico,* 99 Colo. 178, 61 P. (2d) 1, in which case we sustained a judgment for plaintiff. It is proper to point out that the contentions of the city in that case were not the same as here. There "The city's defenses were a denial of negligence; a plea that the plaintiff was guilty of contributory negligence in not filling in the excavation left by the city; that the flood was of such unprecedented magnitude as to constitute an act of God; that the plaintiff's damage was caused by the negligence of the Moffat company maintaining a bridge which obstructed the flow of water in the channel or that such negligence concurring with an act of God was the proximate cause of the injury; and that the city in removing the pipe was acting in its governmental capacity, and therefore was not liable for damages.",

Throughout the argument on behalf of both plaintiff and defendant in the Talarico case, it was assumed that unless some one or more of the foregoing defenses were established, a failure to exercise ordinary care in maintaining the dyke constituted negligence. In the instant case the contention was repeatedly and consistently advanced by defendant from the time issue was joined on the pleadings and subsequent thereto that the only duty the city owed plaintiff was not to increase the flood burden that the natural condition of the stream imposed on him and that he could not recover in the absence of a showing of a violation of such duty. Whether the contention made here might have been urged in the former case

under the assignments of error there presented, and if so what our decision might have been under the facts of that case, we need not now determine. It is sufficient for the present purpose to say that it was not made in that case; that it is made in the case before us and is within the assignments of error.

The second contention that there was error in excluding certain evidence of elevations, height of water above the flood of August 3, referred to as the Castlewood Dam flood, we think is well founded. There is undisputed evidence that the crest of the second flood, measured by the city, was 1.15 feet higher than the former flood and that without any break in the dyke the first flood covered a part of the lands of plaintiff, though not deep enough to cause damage. If the jury believed from the evidence before it that the second flood was 1.15 feet higher at the point where the water came out upon plaintiff's land during the first flood, then it certainly would have been justified in finding, under the knowledge possessed by the generality of mankind that the second flood would have caused a greater inundation of the land than the first even if the levee had not broken. It was not incumbent on the city to show the extent of inundation by direct evidence. Competent circumstantial evidence for that purpose is admissible.

The third contention of the city was that the giving of instruction No. 2 was error because it placed on defendant the burden of proving all the material allegations of its defense. While we think it did not present a clear statement of the law, we need not determine whether or not it was prejudicial, for other grounds necessitate a reversal.

The judgment is reversed.