## No. 14,861.

CITY AND COUNTY OF DENVER *v.* STRAFACIA.

(129 P. [2d] 674)

Decided August 3, 1942.    Rehearing denied October 5, 1942.

Mr. MALCOLM LINDSEY, Mr. GLENN G. SAUNDERS, Mr. ROBERT J. KIRSCHWING, for plaintiff in error.

Mr. A. X. ERICKSON, Mr. DON B. OLIVER, Mr. CON K. O'BYRNE, Mr. ALBERT E. SHERLOCK, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THIS is an action to recover damages resulting from the flooding of plaintiff's lands and crops, allegedly caused by the defendant city's negligence. Trial resulted in a verdict for plaintiff, and the city seeks a reversal of the judgment entered in due course.

We have heretofore considered two similar cases growing out of the same flood: *Denver v. Talarico,* 99 Colo. 178, 61 P. (2d) 1, and *Denver v. Pilo,* 102 Colo. 326, 79 P. (2d) 270. The waters involved in those cases, and in the instant proceeding, overflowed from the South Platte River at the same point, at the same time, and upon and over the lands of the various plaintiffs. Reference will be made to these former adjudications

as the Talarico and Pilo cases, and the opinions therein should be read in connection with the present one, to obtain a general picture of the situation out of which the instant case arose. A judgment for plaintiff in the Talarico case was affirmed; the judgment in the Pilo case, likewise for plaintiff, was reversed for reasons appearing in the opinion.

In the instant proceeding, the fifteen acres of land alleged to have been damaged and the crops thereon destroyed, is located immediately south and slightly west of the Pilo tract, and, with respect to the embankment through which it is alleged the flood waters causing the damages escaped, it lies directly north a distance of approximately one-half mile. The land, as is clearly disclosed by the record, lies in the flood basin of the South Platte River and in the natural state of the river was subject to overflow in time of flood.

In all respects essential to an understanding of this case, the physical situations of plaintiff's land and that involved in the Pilo case, in so far as being located in the flood water area of the stream and in so far as the flooding and destruction of the crops thereon are concerned, are the same, and whatever has been said concerning the physical relationship of the land in the Pilo case to the Platte River, the effect of the flood, and the break in the embankment causing its inundation, is equally true of the land involved in the instant case.

After the Pilo case was tried in the district court, and before a review thereof was sought by the city, the attorneys for the respective parties entered into a stipulation as follows:

"It is stipulated and agreed by and between counsel for City and County of Denver and on behalf of said City and County of Denver and counsel for Pasqual Strafacia and on behalf of said Pasqual Strafacia that cases No. 3577 in the District Court for Adams County, Colorado, in which Pasqual Strafacia is plaintiff and the City and County of Denver is defendant, that the Court

shall enter judgment upon the basis of a verdict rendered in the case of Antonio Pilo vs. the City and County of Denver, being case No. 3573 in said court as if the jury in said last named case had found a verdict in said first named case and upon the same percentage of the total amount of damages prayed as was actually given by the verdict in said case of Pilo vs. the City and County of Denver.

"It is further stipulated and agreed that the record, exceptions, offers of testimony, rulings of the Court, exceptions to the verdict actions of the jurors and every other thing and matter pertaining to the case of Pilo vs. the City and County of Denver, shall apply in full in the case of Pasqual Strafacia vs. the City and County of Denver and that the defendant shall have every right to appeal from the verdict and judgment in this case as it has in the case of Pilo vs. the City and County of Denver and that the record in that case shall be taken and deemed in every respect to be the record in this case except as to the amount of damages.

"It is further stipulated and agreed that any further proceedings had upon said case of Pilo vs. the City and County of Denver shall be taken and deemed to be proceedings upon this case and any appeal, writ of error, judgment or other action of this Court or Supreme Court of the State of Colorado or any other court with reference to said case of Pilo vs. the City and County of Denver shall in every respect apply to and be deemed to have been taken in this case.

"It is further stipulated and agreed by and between counsel that there be a stay of execution in this case pending the outcome of any appeal in the case of Pilo vs. the City and County of Denver providing such an appeal be prosecuted with due diligence.

"In no event shall judgment in this case be deemed to have been entered by consent."

█ The city contends that this stipulation was, in effect, a consolidation of the cases, if not for trial, at

least for disposition, and that nothing now can be done in the instant case that could not be done in the Pilo case. We think this is clearly the intent and meaning of the stipulation and we shall determine the matters and issues here presented as though what has been done in this case had been done in the Pilo case, and that case retried.

With the stipulation still in effect, and after the reversal of the judgment in the Pilo case, plaintiff in the present case sought to amend his complaint, and over the objection of the city, the court permitted him to do so in manner as will hereinafter appear.

To understand the present controversy with respect to the amendments and the issues involved, it is necessary to have in mind the theory on which the Pilo case was instituted and tried, since we hold under the stipulation that what was done in the Pilo case was in effect also done in the case before us.

The pertinent·allegations in the complaint in the Pilo case, and in the original complaint in the case at bar, were in legal effect the same. The allegations of the original complaint in this case were as follows:

"That the water in said river, as hereinafter complained of, which entered and flowed over part of section 14 in said last·mentioned township and range, which section adjoins said section 11 on the south side thereof, flowed and drained with the slope and drainage of said land in a northerly direction, onto and over plaintiff's land and back into said river.

"That on said tract of land hereinbefore described this plaintiff had planted a crop of celery, covering an area of approximately fifteen (15) acres, which crop grew well and was cultivated, tilled, irrigated and cared for by plaintiff at great expense, and was in fine growing condition and in a high state of cultivation and which had fully developed and matured, and was of great value until the damage thereto and destruction thereof caused by defendant on or about September 9, 1933, as herein

alleged, and would, but for said damages and destruction, have produced a large and valuable crop of celery.

"That on the 9th day of September, 1933, the defendant, the City and County of Denver, proceeded to alter and replace a drainage pipe under the westerly bank of said river, about 238 feet due west of the city bridge extending over said river at 52nd Avenue, if extended, and Franklin Street, near the northern boundary of said City and County, and while in the performance of the work of removing and replacing said pipe said defendant negligently and carelessly excavated the said embankment, over and around said pipe, which was erected to protect plaintiff's lands from the flood waters of said river, and did carelessly and negligently leave a large area of the bank of said river at said place excavated on the afternoon of September 9, 1933, and thereby negligently and carelessly left a large gap or opening in the bank of said river adjacent to and surrounding said pipe, unprotected from said waters.

"That late in the evening of said last mentioned date and during the early morning of the 10th day of September, 1933, large quantities of water flowed down said Platte River and entered and passed through the opening excavated by the defendant herein, and so negligently and carelessly left by said defendant, so that large quantities of water, rock, mud, debris and noxious matters were carried to and deposited upon the lands and property of this plaintiff, then in a high state of cultivation, * * * ." Thereafter follow allegations of damage.

The Pilo case, and in effect this case also, was instituted, tried and submitted to the jury on plaintiff's theory of the law that the city was under a duty to plaintiff to exercise ordinary care in refraining from cutting the embankment below the maximum height of the flood stage of the stream known to have occurred theretofore, and also to use ordinary care not to impair the efficiency of the embankment as constructed, and

that a breach of such duty subjected the city to liability for damage to plaintiff occasioned by such alleged failure of duty. The evidence introduced by plaintiff in the Pilo case failed completely to establish that the embankment was constructed to protect his lands. It was wholly to the effect that it was made and maintained by the city for the protection of its citizens and that such protection as it afforded plaintiff, if any, was not its purpose, but was only incidental to the purpose of the municipality to protect its inhabitants. On plaintiff's theory of the law he failed to prove his cause of action. His evidence failed wholly to establish that by the acts of defendant in constructing or maintaining, or in removing the embankment in part, a greater flood burden was cast upon plaintiff than he would have borne had the channel been left in its natural state; he, therefore, failed to prove a cause of action even if he had predicated his right to recover on a correct theory of the law. If there had been any evidence in the record that the embankment was constructed by the city, or by anyone, for the purpose of protecting plaintiff's land, then evidence that the city negligently cut the bank and left the opening unfilled would have made out a cause of action on plaintiff's theory of his case. There was no evidence in the record to establish the first proposition, and therefore the theory of law on which plaintiff tried the case was not tenable. We might have reversed the case for failure to establish a cause of action under plaintiff's own theory of the law without saying anything more in the opinion, but the city had pled as a defense that it was under no duty to plaintiff with respect to its embankment, save that of not increasing the flood burden to which plaintiff would be subjected with the river in its natural state, and in asserting such defense, it affirmatively alleged that in time of flood "in the absence of any alteration of the natural flow of the waters of the Platte River, that said waters would naturally flow upon, over and across" the plaintiff's

land. This allegation plaintiff denied in his replication. Parenthetically, it may be observed that the issue thus created differentiated the Pilo case from the Talarico case. If properly advised concerning the law upon which he must recover, if at all, plaintiff would have tendered the issue of increased flood burden by appropriate allegations in his complaint and defendant would have met it by denial in the answer. Defendant, conceiving the law to be as we thereafter announced it, pled as a defense the *absence* of increased flood burden, alleging "that the plaintiff planted the [various crops] as referred to in his said complaint, within the natural bed of the Platte River as the same runs through that portion of Adams County where such [crops] were planted, *and that in the absence of any alteration of the natural flow of the waters of the Platte River that said waters would naturally flow upon, over and across* the following described property, to-wit: [here follows a description of the Pilo land] when in flood states, and particularly when as great a flood as that existing on September 9 and 10, 1933, was in progress."

As above stated, these allegations were denied by plaintiff. The real and only ultimate fact on which a recovery might be had was thus indirectly placed in issue.

At the close of all of the evidence in the Pilo case, defendant tendered an instruction correctly stating the law, that no recovery could be had by plaintiff unless the evidence disclosed his flood burden had been increased, and this instruction the trial judge refused to give. When error was assigned on such refusal, it was proper for us to pass upon the legal question involved, particularly since it was apparent that other similar cases were pending. We passed upon that question and held that on the record before us there was no evidence sufficient to support a recovery by plaintiff based upon the cause of action alleged in his complaint, and further that there was no evidence to support a recovery on the

issues raised by the answer and replication. Although reversing the judgment, we did not direct a dismissal of the complaint, it being apparent that plaintiff had misconceived the law, and the question of whether he had been injured by the acts of the city, so far as the record in that case was concerned, appeared to depend largely, if not entirely, upon ascertainable physical facts; namely, whether the river was confined by an embankment on its easterly side and whether the relative elevations of the land on the sides of the river were such that the escape of water from the point of the break in the embankment in the natural state of the river would have been first toward the east and south rather than to the west and north. The testimony of plaintiff's witnesses in the instant case establishes that the elevation of the land on the east side of the river is the higher, and that had there been no embankment on that side opposite the breach in the west embankment, there still would have been no appreciable quantity of water flow toward the east.

The negligence upon which plaintiff in the present case relied for a recovery against the city under his pleadings as amended, was correctly set forth by the court in its instruction defining the issues to be determined, in these words:

"That the defendant at the time as hereinafter alleged, was guilty of unlawful, wrongful, negligent and careless acts, thereby causing injury to plaintiff, in that defendant:

"(a) Caused an artificial channel to be constructed for waters of said river, thereby greatly increasing the level of said waters and their erosive powers.

"(b) Caused a narrow artificial channel to be constructed in place of the original basin of said river, whereas if said channel had not been constructed, high or abnormal waters in said river would not have spread out over the area of the basin and the head and primary volume of abnormal waters in said river would have

been greatly retarded and reduced, sediment, debris and deleterious matter allowed to settle and the height and level thereof greatly lowered and leveled before reaching the vicinity of plaintiff's lands.

"(c) Caused the waters of said river to be diverted from said artificial channel at a point about 238 feet west of the City bridge extending over said river at Fifty-second Avenue, if extended, and Franklin Street in the City and County of Denver, in the direction of and onto plaintiff's real and personal property.

"(d) Negligently and carelessly cut the ancient original bank of said stream at the aforesaid point.

"(e) Increased the hazard to plaintiff's real and personal property by the construction of said artificial channel.

"(f) Excavated a pipe in the bank of said river at the aforesaid point.

"(g) Excavated a pipe in the natural bank of said stream.

"(h) Constructed said artificial channel in such manner that the carrying power thereof would result in the placement or deposit of logs, timber, trees, sand, silt and other debris against the aforesaid bridge erected by the City and County of Denver across said stream thereby causing the waters in said stream to be banked up, held back, and the height and level thereof greatly increased. The plaintiff also alleges:

"That in the evening of the 9th day of September and the morning of the 10th of September, 1933, large quantities of water, debris and deleterious materials from said artificial channel covered the lands and crop of the plaintiff hereinbefore described, causing said crop to be entirely destroyed, plaintiff's lands to be damaged by the deposit of sand, mud, debris and deleterious material thereon. That plaintiff's growing crop was damaged in the sum of $9,000.00 and his real property in the sum of $130.00."

It will be observed that save for the allegation that

the city negligently and carelessly cut the ancient original bank of the stream when it made the excavation of which complaint is made, all of the other acts of negligence upon which plaintiff relies are but statements of the specific manner in which the flood burden to plaintiff's real and personal property allegedly was increased by the construction and maintenance of the artificial channel and the excavation through the artificial embankment.

■ As we have pointed out in the foregoing analysis of the Pilo case, the issue of whether there was an increased flood burden to plaintiff's property by reason of the construction and maintenance of the embankments and the excavation thereof was tendered in that case by the city's allegation in its answer of *no duty* to construct or maintain the embankment other than not to increase plaintiff's flood burden above that to which he was subjected in the natural state of the river and plaintiff's denial thereof in his replication. Any evidence that the channel was so constructed or maintained as to cause a deposit of debris against the city's bridge immediately below the excavation; in fact, any evidence that would have been admissible under the allegations of the amended complaint setting forth the manner in which the plaintiff's flood burden was increased, save the cutting of the ancient bank of the stream, would have been admissible to rebut the city's allegation of the ultimate fact that it was not so increased under the issues raised by the original complaint, answer and replication.

Unless the city has been harmed by the introduction of the issue of the cutting of the original bank of the stream, it has not been harmed at all, for the amended complaint merely permitted the issue of increased flood burden vel non, raised indirectly by the original pleadings, to be raised directly as it should have been in the first instance.

■ Our examination of the record convinces us that,

assuming that the original bank of the stream was cut, although the evidence thereof is not very convincing, that the plaintiff has wholly failed to show that such act was the proximate cause of the flooding and the damage to his land and crop.

There was extensive expert testimony that by channelizing the river, poundage was prevented in the bottoms through the City of Denver, but not an iota of testimony is given by any expert that with a twenty-four hour average flow of 9300 second feet, and a peak flow of 22,000 second feet, the plaintiff's lands would not have been washed and inundated in the same manner as they were in the present case. All witnesses, even those called for plaintiff, agree that the artificial bank on the west side was raised at least several feet above the natural bank. The evidence is equally clear that at and above the bridge the water was over the west embankment. In the light of the photographs taken the morning of September 9th, with the river in flood stage, but below the peak, which were introduced by plaintiff as exhibits, showing driftwood strewn over and across the embankment between the bridge and the excavation around the drain pipe, no other reasonable conclusion could be reached than that the water had been up to the top of, and that it ran over, the raised embankment. With the bank in its natural state and several feet lower than it was after the city had raised it, there can be no doubt that the whole of the valley adjacent to the river where the break occurred would have been flooded if the river bank had been left in its natural state. When out of the low water channel the water, as plaintiff alleged in his original complaint, would have "flowed and drained with the slope and drainage of said land in a northerly direction onto and over plaintiff's land and back into said river." We hold that the evidence, as disclosed by the record, does not support the contention that the cutting of the ancient bank of the river was the proximate cause of the injury to plaintiff's property.

■ It should be noted that when the opinion in the Pilo case was written, while evidence of any act on the part of the city to increase the plaintiff's flood burden above that which he would sustain with the river in its natural state, was admissible under the issues made by the pleadings, there was no evidence or contention by the plaintiff in that case that there was a destruction of poundage on the upper reaches of the river above his land, or that the level of the water, its velocity and its debris-carrying powers, were increased by its being channelized between embankments, and that these were the means by which plaintiff's flood burden was increased. That opinion should not be construed as applicable to any situation other than that shown to exist in that case, and the contentions with respect thereto. Under such a situation, while we can understand how the trial court, not being familiar with all of the evidence and the contentions of the parties in the Pilo case, might read that opinion as determinative of the question of whether the destruction of poundage and the increase of velocity and debris-carrying powers were factors of which plaintiff could complain or their results purely damnum absque injuria under the applicable law, the opinion should not have been interpreted as foreclosing him from such a determination and from instructing the jury in accordance with the law applicable to such a situation. We make this observation, not that we deem it necessary to pass on that issue in disposing of this case, but in view of the sharp conflict in the contentions of the parties here as to the law in such cases, and that the Pilo case may not be held to have determined it, when no such issues were raised or argued in that case.

■ In the view we take of this case, it is not necessary to consider all the defendant's assignments of error. The city moved for a nonsuit at the close of plaintiff's case, and for a directed verdict at the conclusion of the evidence on the ground that the latter was not sufficient

to sustain plaintiff's cause of action. Both motions were denied, to which rulings defendant duly excepted. We think the motions were good and that it was error to overrule them.

We have studied the record carefully on the matter of the effect of the elimination of poundage by the channelizing of the river through the City and County of Denver, the increase of the height of the water level, increased velocity and power of the water and the resulting carriage and deposit of silt and debris. The peak flow of the Castlewood Dam flood at the city gauging station is disclosed by the record to have been 15,500 second feet, with the twenty-four hour average as shown by records in the State Engineer's office to have been 3,000 second feet. In the September ninth flood the corresponding figures are a peak of 22,000 second feet and a twenty-four hour average of 9,300 second feet.

While the foregoing alleged effects on the river as a result of channelizing it were well established by the testimony of engineers, none of such engineers ventured the opinion that the poundage would have been sufficient to decrease the peak flow of the water or to decrease its level or debris-carrying power sufficiently to prevent plaintiff's sustaining exactly the damage which he suffered. The testimony of the city's experts was direct and positive that the effect would have been the same and that plaintiff would have sustained the same damage had nothing been done to alter the natural state of the river.

The new element sought to be introduced; namely, that the river was obstructed by the construction of the embankments to the bridge, which dammed the river and increased the height of the water level, is not supported by the record. The testimony of the plaintiff's witnesses is to the effect that even with the debris piled against the bridge the channel beneath it was sufficient to carry the water which did not flow over it. Engineer Coberly, testifying as an expert for the plaintiff, said

that if the channel still carried the flow, the bridge would not affect the water level even though a part of the channel were obstructed by debris washed against it.

With the view that we take of the situation; namely, that the evidence was insufficient to support plaintiff's cause of action, it is unnecessary that we determine, as matter of law, whether the destruction of poundage by channelizing a stream, if it does result in raising the level and increasing the velocity sufficiently to cause an inundation that would not otherwise result with the stream in its natural state, is within the lawful rights of the city, and the one whose lands are thus inundated cannot recover under the theory of damnum absque injuria. We need not, and do not, determine this issue, for even under the plaintiff's theory of the law on this point, we hold that his evidence does not support such a cause of action.

The plaintiff, in effect, has been afforded two trials of this case, and in neither has his evidence sustained a cause of action. The judgment of the district court is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE BOCK and MR. JUSTICE JACKSON not participating.