CITY OF DENVER v. CAPELLI.

| 4 | 25 |
|---|---|
| 9 | 421 |
| 9 | 561 |
| 9 | 565 |
| 4 | 25 |
| .f34 | 276 |
| 20a | 137 |

1. When the law confers a power, judicial in its nature (*e. g.,* to construct all necessary drains and sewers) upon a municipal ·corporation, no liability attaches so long as the authorities fail or refuse to exercise that power; nor can the city be made to respond for a mere error in judgment in the plan or system adopted. But if the power be exercised the city will be held to a strict performance of whatever ministerial duties may be incident thereto.

2. When a jury is given two instructions, one of which lays down the law correctly, and the other is inconsistent therewith, and this court cannot determine by which instruction the jury was governed, the judgment will be reversed.

*Error to Probate Court of Arapahoe County.*

ACTION on the case ; plea of the general issue. The defendant in error had judgment in the court below for seven hundred and fifteen dollars.

Mr. CHARLES S. THOMAS, for plaintiff in error.

Messrs. PATTERSON & CAMPBELL, for defendant in error.

THATCHER, C. J.   The defendant in error was the owner of a two story brick building, situate on the corner of First and Fifteenth streets, in Kasserman's addition to the city of Denver.

This action was commenced to recover damages, which, it was alleged, were sustained by her, by reason of the overflow of her premises in June, 1874, May, 1875, and August, 1875, and the consequent destruction of certain personal property, contained in the cellar of the building, and injury done to the building itself.   It is alleged in the declaration, that these injuries resulted from the carelessness and negligence of the city, in the construction of a drain or sewer at the intersection of First and Fifteenth streets, and in the failure of the city to keep the same open and free from all impediments.

The law confers a *power*, judicial in its nature, upon the city to construct all necessary drains and sewers; but until that power is exercised it imposes no *legal duty* upon the city authorities.   Session Laws of 1866, p. 100.

The distinction between the power of the city, and its legal, as separate from its political duty, must be kept steadily in mind.   As long as the city authorities fail or refuse to exercise their discretionary powers, no liability attaches; but if that power be exercised, as is sought to be

proved in this case, by the adoption of a partial system of drainage, to the strict performance of whatever ministerial duties may be incident thereto, the city is bound; and for any failure in that respect it cannot escape liability. But for a mere error of judgment in the plan or system adopted, it cannot be made to respond. If the municipality fails to act, or if acting, it adopts a plan, however inefficient, and constructs its drains in conformity thereto, and injury results to an individual in consequence of the plan being defective, or of the drains not being of sufficient size to accommodate all the water, which (if the drains were larger) would naturally flow through them, there is no resulting liability to the city. If, however, a drain be constructed, whether of large or small dimensions, the duty of the city at once arises to keep it in repair. To the extent of its capacity it must be kept efficient. It is equally true that the city is liable for damages resulting from the unskillful or negligent manner of constructing its drains or sewers. These principles are, it is believed, in accord with the weight of authority and the better reason. *Mills* v. *The City of Brooklyn*, 32 N. Y. 489; *Carr et al.* v. *The Northern Liberties*, 35 Pa. 324, *City of Atchinson* v. *Challis*, 9 Kans. 603; *Judge* v. *City of Meriden*, 38 Conn. 90; *The City of McGregor* v. *Boyle*, 34 Iowa, 268; Wharton on Negligence, § 260; Dillon on Mun. Corp., § 802, *et seq.;* Shearman & Redfield on Negligence, § 127.

In the Pennsylvania case cited, *supra*, Chief Justice LOWRIE, speaking for the court, says: "Any street may be complained of as being too steep or too level; gutters as being too deep or too shallow, or as being pitched in a wrong direction; and there may be evidence that these things were carelessly resolved upon, and then a tribunal that is foreign to the municipal system, will be allowed to intervene and control the town officers. And the end is not yet; for if a regulation be altered to suit the views of one jury, the alteration may give rise to another case, in which the new regulation will be likewise condemned. This theory is so vicious that it cannot possibly be admitted."

The defendant objected and excepted to the introduction of evidence in regard to the dimensions of the drains, the fall given them, and the manner in which they were connected at the point of intersection. It follows from the principles above laid down, that a subsidiary question for the jury to determine in arriving at a verdict, was whether the drains were of sufficient size to carry off the large quantity of water that accumulated near the corner of First and Fifteenth streets on the occasions of the three heavy rainfalls; if not of sufficient capacity, although they may not have been in proper repair, the plaintiff would not be entitled to recover, in a case where the fall of water was so great that the conduits, if unobstructed, would have been so wholly inadequate to carry off its great volume, that the surplus thereof would have overflowed the plaintiff's premises, and occasioned the identical grievance complained of. In other words, if the proximate, efficient cause of the injury, is not attributable to the carelessness or negligence of the defendant, there can be no recovery. One method of determining whether the drains, if unobstructed, were of sufficient capacity to carry off the flood of waters, was by a calculation based upon the dimensions of the conduits, the fall given them, and the manner of their construction at the point of junction. For this purpose the evidence was admissible.

It was not proper for them to consider evidence of this character, with the view to fix the liability of the defendant on the ground that the city had adopted an injudicious *plan* of sewerage, or had constructed sewers that were insufficient, when in good repair, to discharge, at all times and under all circumstances, whatever quantities of water might find their way to them. The jury were not uninstructed upon this point. The court charged them, in this behalf, as follows:

" But in ascertaining whether the culverts were unskillfully constructed, you will neither consider the fact of the elbow in the culverts, the inadequate size of them, their

inadequate fall or decline, the place where upon the streets they were constructed, nor the plan of their construction, because these are matters wholly of judgment on the part of agents of the city, and for which defendant is not liable to the plaintiff."

This instruction was quite as favorable, on the points it touches, as the law will warrant.

Error is assigned upon the following instruction :

"If the jury believe, from the evidence, that rainfalls such as those in June, 1874, and May and August, 1875, had occurred in the city of Denver previous to these dates, several times, and within the general knowledge of persons then living in the city, and, while such rainfalls had not been frequent, they had still been of occasional occurrence, the defendant cannot escape responsibility in this case, solely on the ground that the rainfalls in controversy were extraordinary or unusual. Such rainfalls cannot be said to be the acts of God, for damages resulting from which, persons are in no case to be held responsible. *If such rainfalls might have reasonably been anticipated from past experience, no matter how great or violent they were, the defense must fail the defendant.*"

This instruction is, we think, so worded as to create the impression upon the minds of the jury, that it was the duty of the defendant, possessed of the knowledge that extraordinary rainfalls, at more or less remote intervals, had visited the city, to adopt such a system of drainage as would effectually protect property owners from injury resulting from the overflow of their premises, occasioned by such unusual rainfalls. The city is charged with no such duty. It is not called upon to anticipate or estimate the probable amount of water that may, at any time, fall within its limits, and to construct drains with reference thereto. It is not legally bound to construct any drains whatever, for the purpose of protecting its inhabitants from surface water. If the city constructs a drain, it is not for the citizens to say, that it is not of sufficient capacity to

convey all the water that may accumulate at a time of a flood, such as experience teaches, may now and then be anticipated. It is with the city authorities exclusively, to determine whether *any* drain shall be built, its dimensions and the ▮▮▮▮ according to which it shall be constructed. If the drain intended for the escape of surface water be constructed, the citizen has a right to expect that it will be kept open and in repair; so that it will at all times, up to its original capacity, be efficient.

The question whether, when a ditch is once constructed, it may thereafter be wholly abandoned, and the city, in consequence of such abandonment, be exempt from liability to an individual, in a case where he was left in no worse condition than he would have been had the drain not been made (*City of Atchison* v. *Challis,* 9 Kans. 603), does not arise, there being no evidence tending to prove such an abandonment.

The jury may have been misled by this instruction which left so much to inference. That in another part of the charge, another instruction, laying down the law correctly, and inconsistent with the instruction under consideration, was given, is not material. This court cannot determine by which instruction the jury was governed. It is enough for us to know that error may have intervened. On this ground the judgment must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*