No. 12,394.

CITY AND COUNTY OF DENVER *v.* MASON.
(295 Pac. 788)

Decided January 19, 1931.

Mr. THOMAS H. GIBSON, Mr. GEORGE O. BAKKE, Mr. GEORGE HETHERINGTON, for plaintiff in error.

Mr. JOHN E. MOORE, Mr. DEE H. BEER, Mr. CHRISTIAN D. STONER, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

ELIZABETH G. Mason had judgment against the City and County of Denver for $1,250, damages to her property alleged to have been sustained during 1925, 1926 and 1927 as the result of negligence of the city in the construction and maintenance of certain sewers. The city here contends that no liability exists for injuries

sustained as the result of the exercise of its quasi judicial discretion in the adoption of a defective or insufficient sewer system and that no negligence was shown in the construction and maintenance thereof.

Prior to 1921 the city adopted a plan for a storm sewer covering a large area, including Park Hill and vicinity. This system was partially completed and in 1921, notwithstanding the objections of property owners in the vicinity and the city's knowledge of the inadequacy thereof, a temporary connection was made at 17th and Jackson streets with a small sanitary sewer which was patently an insufficient outlet therefor. During ordinary rainstorms the increased water from the storm sewer emptied into the inadequate sanitary sewer, resulting in the backing up of water therefrom and the flooding of basements, streets and territory surrounding the property of defendant in error. Although the connection of the sewer with the sanitary sewer was intended to be temporary, it has continued to exist to this date, notwithstanding repeated demands that the city remedy the defect and obviate repeated injuries to numerous property owners. The insufficiency of the outlet was first demonstrated in 1921, when property was inundated and damaged. In the later years damages so sustained have been more frequent and severe.

The sole question presented by this record is: Is the city liable for damages resulting from its failure to exercise reasonable care to remedy a known defective sewer system?

■■ By the great weight of authority, it is held that a municipality is under no legal duty to construct drainage sewers; that no liability attaches because of the adoption of a defective plan of drainage, because it is thereby exercising a governmental function; but that in the construction and maintenance of sewers, a municipality acts in its ministerial capacity and is liable for negligence in connection therewith.

The Colorado cases touching these points are: *City of*

*Denver v. Capelli,* 4 Colo. 25; *City of Denver v. Rhodes,* 9 Colo. 554, 13 Pac. 729; *City of Boulder v. Fowler,* 11 Colo. 396, 18 Pac. 337; *Aicher v. Denver,* 10 Colo. App. 413, 52 Pac. 86; *McAuliffe v. City of Victor,* 15 Colo. App. 337, 62 Pac. 231; *Veraguth v. City of Denver,* 19 Colo. App. 473, 76 Pac. 539; *City of Denver v. Davis,* 37 Colo. 370, 86 Pac. 1027, and *Denver v. Maurer,* 47 Colo. 209, 106 Pac. 875. However, none covers the identical question here presented.

In 6 McQuillin Municipal Corporations (2d Ed.) page 922, the rule is announced as follows: "If a sewer, as planned, proves to be insufficient or defective, by actual experience, then, it is held in some states, a duty devolves on the municipality to remedy the situation, if possible."

Also at page 937 appears the following: "A municipality is answerable in damages if it discharges the outflow of a sewer, or a system of sewerage upon the property of another, and this upon the ground that such discharge constitutes a private nuisance for which action may be maintained by the person injured. Thus flooding a basement of private property by the backwater of a sewer due to negligent sewer connection—as connecting a surface drain with a small sewer instead of a storm sewer constructed by the city—renders the municipality liable, notwithstanding there was an unusual rainfall."

A very satisfactory elucidation of the rule appears in 4 Dillon on Municipal Corporations (5th Ed.) at page 3061:

"There is a municipal liability where the property of private persons is flooded, either directly or by water or sewage being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction, and this whether the lots are below the grade of the streets or not. The cases support this proposition with great unanimity.

"* * * Where such sewers are built and solely con-

trolled by a municipality, many cases, as shown in the sections of the text relating to this subject, have held that the municipality is liable for direct inundations of connecting property with water, filth and sewage, where the sewer, although it may have been built pursuant to a plan adopted by the municipality, is negligently maintained by it after the sewer has been shown by experience to be insufficient, under ordinary conditions, to prevent such a nuisance and direct injury to the plaintiff's property. * * *''

''In such cases the injury to the property owner is manifest. It is caused by the sole act or neglect of the municipal authorities. They alone have the power to remove the cause. The property owner is substantially remediless unless he can quicken and secure corporate action by means of a civil suit for damages. * * * If the city has the power and the means by taxation or otherwise to remedy the defective sewer, and yet, under the conditions above defined and limited, negligently and without necessity or lawful reasons continues such sewer, it must on legal principles be liable, unless it can justify its acts or omission by its legislative powers and duties relating thereto. Certain it is that these powers were not given with any such intent. * * *''

One of the leading cases in support of this doctrine is *Seifert v. City of Brooklyn,* 101 N. Y. 136. Therein at page 143 is stated: ''We are also of the opinion that the exercise of a judicial or discretionary power, by a municipal corporation, which results in a direct and physical injury to the property of an individual, and which from its nature is liable to be repeated and continuous, but is remediable by a change of plan, or the adoption of prudential measures, renders the corporation liable for such damages as occur in consequence of its continuance of the original cause after notice, and an omission to adopt such remedial measures as experience has shown to be necessary and proper. (Wood's Law of Nuisances, §752.) While in the present case the cor-

poration was under no original obligation to the plaintiff or other citizens to build a sewer at the time and in the manner it did, yet, having exercised the power to do so and thereby created a private nuisance on his premises, it incurred a duty, having created the necessity for its exercise, and having the power to perform it, of adopting and executing such measures as should abate the nuisance and obviate damage." *Haley & Lang Co. v. City of Huron,* 36 S. D. 6, 153 N. W. 891, is to the same effect.

In *Tate v. City of St. Paul,* 56 Minn. 527, 58 N. W. 158, 45 A. S. R. 501, the following instruction was approved: "That where a public work, for instance a sewer, as the same was originally planned and constructed, is found to result in direct and physical injury to the property of another, that would not otherwise have happened, and which, from its nature, is liable to be repeated and continuous, but is remediable by a change of plan or the adoption of prudent measures, the corporation is liable for such damages as occur in consequence of the original cause, after notice and an omission to use ordinary care to remedy the evil." This instruction is substantially identical with that given by the trial court in this case.

In *Ashley v. City of Port Huron,* 35 Mich. 296, 24 A. R. 552, the rule is forcefully expressed as follows: "That the right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and

never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other.'' Citing cases.

See also 9 R. C. L., p. 664, et seq.; 43 C. J. 1125, and note to *City of Georgetown v. Commonwealth,* 61 L. R. A. 673; also *Arndt v. City of Cullman,* 132 Ala. 540, 31 So. 478; *Hart v. City of Neillsville,* 125 Wis. 546, 104 N. W. 699, and *Hart v. City of Neillsville,* 141 Wis. 3, 123 N. W. 125.

Ordinary common sense always points the way to justice. If a municipality authorized the dumping of garbage upon the property of its citizens, one would hesitate to question their right of action for damages sustained thereby. A much stronger case of negligence is here shown. The failure of the city to act resulted in repeatedly inundating the property of defendant in error and others with filthy sewage.

Under such circumstances, to permit the city to escape liability under the cloak of the exercise of a governmental function would be unwarranted and unjust.

Judgment affirmed.