GEORGE C. BUERKEL & another *vs.* CITY OF BOSTON.

SAME *vs.* SAME.

BUERKEL-GASTON, INC. *vs.* SAME.

Suffolk. March 7, 1934. — May 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & LUMMUS, JJ.

*Municipal Corporations,* Public drain.

At the trial of an action of tort against a city, there was evidence that premises occupied by the plaintiff abutted on a public way in which the defendant, pursuant to an order duly adopted and recorded, had constructed a drain to carry away surface water only; that one of the catch basins on the drain was located near the plaintiff's premises; that the openings of that catch basin became obstructed by débris and the catch basin itself filled up with dirt above the outlet into the drain, so that water could not flow from the way through the catch basin into the drain; that in storms in September, October and June there were heavy rainfalls, and surface water flowed into the basement of the plaintiff's premises; and that the city had notice of the

condition of the catch basin immediately after the storm in September, but did nothing thereafter to free it from obstruction. There was no evidence that the plaintiff ever connected his premises with the drain in accordance with G. L. (Ter. Ed.) c. 83, § 5. *Held*, that

(1) In the absence of evidence that such a connection had been made, the action stood on the same basis as it would have if no such drain and catch basin ever had been constructed in the way and there had been no collection of water which flowed back or was discharged, after accumulation, upon the plaintiff's premises;

(2) In the circumstances, the defendant was not liable for its failure to restrain the passage of surface waters from the way over land of the plaintiff;

(3) The plaintiff could not recover.

THREE ACTIONS OF TORT. Writs dated June 22, 1929, those in the first two actions being subsequently amended.

The actions were tried together in the Superior Court before *Donahue*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant in each action. The plaintiffs alleged exceptions.

The case was submitted on briefs.

*C. W. Dealtry*, for the plaintiffs.

*E. D. Hassan*, Assistant Corporation Counsel, for the defendant.

PIERCE, J. These are actions of tort. The plaintiffs seek damages for the alleged negligence of the defendant in the care, operation and maintenance of drains and catch basins, located in Public Alley 903 in the city of Boston, whereby the same became obstructed, and water backed up and overflowed into the basements of stores fronting on Massachusetts Avenue, occupied by the plaintiffs, causing damage to the plaintiffs' goods and merchandise.

The cases were tried to a jury which took a view of the location. The defendant at the close of the evidence presented motions for a directed verdict, all of which were alike and based on the grounds which follow: "1. That upon all the evidence and the pleadings in the case, the plaintiff is not entitled to recover. 2. That the defendant has sufficiently proven that the negligence of the plaintiff contributed to his own damage, and consequently the plaintiff is not entitled to recover. 3. That there is no sufficient evidence in the case that the defendant was negli-

gent." The judge directed verdicts for the defendant on the first and third grounds, but not on the second and saved the plaintiffs' exceptions thereto.

The evidence in its aspect most favorable to the plaintiffs disclosed that surface water flowed into the basements on the premises occupied by the plaintiffs on September 11, 1927, October 13, 1927, and June 14, 1928; that on each of these dates a heavy rain in excess of one inch visited Boston and the precipitation was unusual. The evidence further showed the following facts: The plaintiffs occupied the store premises numbered 177 Massachusetts Avenue with the basement thereunder and the adjoining basement at number 177-A under an unexpired lease. The building numbered 177 extended through to Public Alley 903. At the rear of the building there were double doors leading to the basement and about ten feet from the curbing. There was a space between the bottom of these doors and the top of the sill of about an inch, and the top of the sill is seven and one half inches above the grade of Public Alley 903. The surface of the private land between the rear of the building and Public Alley 903 is concrete with a slight slope toward the alley.

Public Alley 903 runs in a southerly somewhat easterly direction, at a sharp grade for the first seventy feet, from Haviland Street to a corner adjoining Public Alley 904, which runs westerly to Edgerly Road, formerly Bickerstaff Street. There is a drain for surface water in Public Alley 903 commencing about seventy-five feet from the lot line of Haviland Street, twelve inches in diameter, and this drain runs to Public Alley 904 and from there connects with a surface drain in Edgerly Road. There are two catch basins in Public Alley 903, and a third catch basin at the intersection of Public Alley 903 and Public Alley 904. One of the catch basins in Public Alley 903 was located at the rear of number 175 Massachusetts Avenue at the lowest part of the grade from Haviland Street, and near the premises occupied by the plaintiffs. The surface water during the storms in September and October, 1927, and in June, 1928, flowed down the grade of Public Alley 903 and "washed down on top

of the catch basin . . . paper, excelsior, sticks," and other things, which became "stuffed down between or in the openings . . . of the catch basin." The catch basins thereby became covered with dirt and refuse and no water was able to enter them. They were approximately eight feet deep with an outlet into the drains, which were about two and one half to three feet from the bottom of the catch basins. The catch basins were probably three to three and one half feet in diameter, and dirt had accumulated in them to a height far above the outlet. They were plugged up and would not carry away the water, and the water "could not flow through, and could not leave the catch basin to go out of the outlet into and through the drain pipe."

There was evidence that the city had notice of the condition of the catch basin immediately following the storm of September, and knew that it was obstructed to its top and that it would not receive and carry away surface water. Thereafter nothing was done by the city to free it from obstructions which prevented the accumulation of water in the basin and the flow from the basin through the outlet and the drain pipe. During storms in September and October, 1927, and in June, 1928, surface water was not received in the catch basin because of the obstructions above described, and such surface water as was received in the basin for like reason did not overflow into the drain. There is no evidence to show that the obstruction to the catch basin, or its filling with dirt above its outlet to the drain, dammed the water as it flowed down Public Alley 903 and thereby caused the water which would naturally be received by the catch basin and discharged into the drain to flow back into or upon the plaintiffs' premises.

It was in evidence that the drain for surface water in Public Alley 903 was constructed by the defendant in 1919, and that it carries only surface water; that this drain was constructed pursuant to an order of the street commissioners of the city of Boston, approved by the acting mayor on June 25, 1915, and recorded June 29, 1915, in the registry of deeds for Suffolk County. G. L. c. 83, § 5, (originally St. 1903, c. 383, § 1,) provides that "When a town has provided both

a drain for waters and a sewer for sewage in a public way, the owner of every parcel of land abutting on such way or connected with such drain or sewer shall arrange his plumbing so that the waters shall be kept separate from the sewage; and shall make such connections with the drain and sewer respectively that the waters shall pass into the drain and the sewage into the sewer in accordance with the directions of the board or officer having charge of the repair and maintenance of sewers in such town." There is no evidence in the record to the effect that the plaintiffs ever made connection with the surface water drains as they were required to do under said statute or that they were required so to do by any ordinance of the city of Boston. These cases stand or fall, in the absence of such connection made as required, upon the issue whether the obstruction of the catch basin and the failure of water to flow through it to the drain was an act of negligence for which the defendant is liable if surface water enters upon the plaintiffs' premises which would have passed into the drain if the catch basin had been free to collect such surface water. In the absence of a statute a municipality is not required to restrain the passage of surface waters from its streets over lands of adjacent or abutting owners. *Emery* v. *Lowell,* 104 Mass. 13. *Barry* v. *Lowell,* 8 Allen, 127. *Bates* v. *Westborough,* 151 Mass. 174. The cases stand the same as they would have done had no drain for surface water or catch basin ever been constructed in Public Alley 903, and there had been no collection of waters which flowed back or were discharged after an accumulation upon the plaintiffs' premises. *Bates* v. *Westborough,* 151 Mass. 174. *Kennison* v. *Beverly,* 146 Mass. 467. The trial judge was without error in ordering a verdict for the defendant in each case.

*Exceptions overruled.*