No. 16,619.

MALVERNIA INVESTMENT COMPANY *v.* CITY OF TRINIDAD, COLORADO.
(229 P. [2d] 945)

Decided April 2, 1951.

Mr. CHARLES S. VIGIL, for plaintiff in error.

Mr. JOSEPH F. NIGRO, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF, the owner of two neighboring apartment houses which were damaged from flooding following a heavy rainstorm, sued the city of Trinidad for $4,000 damages, alleged to have been caused through neglect of the city to care for the storm sewers on lower Arizona and lower Pine streets, and asked that the city be required properly to clean those storm sewers.

In a jury trial, after plaintiff had rested, the court granted defendant's motion for a directed verdict in favor of the city and entered judgment accordingly. The trial court found that the evidence presented a question of the city not keeping open a private drain belonging to plaintiff, and that no prescriptive right would run against the city. The court further found that plaintiff had failed to establish by any evidence defendant city's ownership of a drainpipe to an alleged catch-basin, and that it had failed to prove or establish any legal duty

upon defendant to keep, maintain and repair this drain pipe and alleged catch-basin.

The evidence introduced by plaintiff disclosed the existence of a catch-basin on the private property of plaintiff located between its two buildings into which four down-spouts, two from each building, drained. This privately owned catch-basin is approximately seven feet deep, and an eight inch pipe draining it is about a foot, or a foot and a half, below the surface and runs easterly to plaintiff's property line on Arizona street. This drain does not empty at the curb into the street.

The present owner of the apartments, Mr. Hendrickson, testified that the drainage system carried off the surface water pretty well until 1947, when its rate of speed in carrying off the excess water seemed to slacken, with the result that in 1948, after a heavy rain, damage was incurred as alleged in the complaint. He stated that in the 1947-1948 period he made numerous complaints to the city authorities, and the city's engineer testified he had responded to some of those complaints by examining the storm sewers in the neighborhood and finding them in good working order. It appears from the evidence that sometime between 1920 and 1923 a new curb had been built, narrowing Arizona street and thus widening the sidewalk. At the time of the July, 1948 flooding, which resulted in this litigation, Mr. Hendrickson noticed a bubbling up of water in the dirt portion of this widened sidewalk near the corner of Arizona and Pine streets and south of the Malvernia Apartments frontage. Permission was obtained from the city authorities to cut open the sidewalk, and below the place where the water had been streaming there was located what Mr. Cunningham, superintendent of the water works, described as, "a brick vault which was caved in." Into this vault there ran an eight inch drain, which was a continuation of the Malvernia Apartments drain, extending from its property line. A ten inch line ran from this vault under the street to the main sewer. A test run of water mixed

with bluing from the private catch-basin of the Malvernia Apartments indicated that the water flowed thence into this sub-surface vault or catch-basin under the sidewalk and then was discharged into the main storm sewer in the middle of the street through the ten inch line. The testimony of all the witnesses, both Mr. Hendrickson, the members of the plumbing firm whom he had employed, and the various city officials who were called, indicated that no one knew of the existence of this sub-surface vault or catch-basin under the sidewalk. There was no testimony showing who built the line, or who owned it, or whether the Malvernia Apartments or the city had any rights of easement with respect to it. All the testimony established that the storm sewer system maintained by the city had functioned properly through the storms of 1947 and 1948, and that the city officials, after each storm, had inspected the catch-basins located at the corners of the streets and saw that all debris, sand and other material was removed and that there would be no clogging. The storm sewers operated by the city on Pine and Arizona streets were inspected after the July 1948 storm, and, as appeared from the evidence, they were all clear and functioning properly.

The present owner of the apartments, Mr. Hendrickson, testified that he knew the catch-basin in the back yard of the Malvernia was built sometime around 1914 or 1915, when he remodeled the building. His testimony was to the effect that actual damages, in the way of repairs, amounted to approximately $950; and that the balance of the $4,000 sued for was an estimate of damage occurring to the walls because of cracks that appeared and because of settling.

Following the locating of the subterranean vault or catch-basin under the public sidewalk, the fallen brick and debris were removed and the walls restored and repaired at the expense of Mr. Hendrickson.

▮▮ There seems to be no Colorado case exactly in

point, and the cases bearing on this subject are few in number. In *City of Denver v. Capelli*, 4 Colo. 25, and *City and County of Denver v. Mason*, 88 Colo. 294, 295 Pac. 788, we have followed the two rules: (1) that a city is not liable for the adoption of a defective plan of drainage, which in the former case we referred to as the exercise of judicial power and in the latter case as a governmental function; (2) that a city was liable in those cases where its ministerial, as distinguished from its governmental, function was concerned, and that therefore there was liability for defective construction and maintenance, as in the latter case, or a failure to keep in repair, as in the former.

In *City of Denver v. Rhodes*, 9 Colo. 554, 13 Pac. 729, we announced the rule that the city must keep in repair and free from obstruction such drainage facilities as it has provided. The evidence in the present case would seem to indicate that the city of Trinidad had done that very thing, and that, when extending the curbs in the block in which plaintiff's property was located, it had provided the normal catch-basins for the surface water, and had kept those catch-basins and the storm-sewer system in general in repair and free from obstructions. Had plaintiff, as in the case of other owners, taken measures to throw the flood and surface waters from his land into the street in front of his property, the trouble of which he complains would not have developed. The instant case, therefore, has a similarity in principle to *Aicher v. Denver*, 10 Colo. App. 413, 52 Pac. 86. In that case our Court of Appeals held that Denver was not liable to one whose property had been damaged from surface waters where it was below the level of the street and below the grade which the city authorities had established. In that case also there seems to have been a failure of proof on the part of plaintiff, as appears from the following excerpt from the court's opinion: "Failing to produce proof respecting the grade and a change in it; failing to establish that he built his house on the

existing grade when it was put up; failing to prove that the damages came from any unlawful interference with the proper street level, or from any improper construction or maintenance of a drain which the city had put in, he was not entitled to a verdict, * * * "

Nor do we find a case exactly in point in foreign jurisdictions. In the recent case of *Reid Development Corp. v. Mayor and Council of Borough of Verona,* 10 N. J. Super. 403, 76 A. (2d) 821, the court holds that a city is not liable unless by some act of wrong-doing it has caused water to be cast upon an owner's lands or improvements, and that the burden rested upon plaintiffs to prove that the municipality, by act of wrong-doing, entered upon a drainage scheme as a result of which it collected water from the area mentioned and by artificial drains cast it upon plaintiffs' property.

In *Doud v. Cincinnati,* 152 Ohio St. 132, 87 N.E. (2d) 243, recovery was allowed against the city where the evidence showed there was gradual deterioration of the sewer resulting in injury to plaintiff's property; but, among the findings of fact, was one that inspection by the city at reasonable intervals would have disclosed the deteriorating conditions and prevented the damage. In the instant case, the evidence was that the appropriate officers and employees of the city had made regular inspections of the storm-sewer system and had no knowledge of the vault beneath the sidewalk, the crumbling of which apparently caused the flooding of which plaintiff complains. In *Buerkel v. City of Boston,* 286 Mass. 412, 190 N.E. 788, recovery was disallowed, and the city relieved of liability for damage to plaintiffs' property, where the latter had not connected their drains with the sewer in the manner provided by statute and ordinance.

█ It would seem that the principle to be applied in the instant case is the one adopted in the cases involving change of street grades by a municipality. On that subject, it is stated in Dillon, Municipal Corporations (5th ed.), volume IV, page 3060: "But since surface-water is

a common enemy, which the lot-owner may fight by raising his lot to grade, or in any other proper manner, and since the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface-water in its streets as the adjoining private owner, it is not ordinarily, if ever, impliedly liable for simply failing to provide culverts or gutters adequate to keep surface-water off the adjoining lots, *below grade,* particularly if the injury is one which would not have occurred had the lots been filled so as to be on a level with the street."

Colorado seems to have adopted that doctrine in *Aicher v. Denver, supra.* Following that principle, the owners of the Malvernia Apartments, when the line of a new curb was established and a new curb and gutter installed in the early 1920s, had the alternative of carrying their surface water directly out to the street in front of their property and emptying it at the new curb line, or continuing their own drainage system which apparently was already in existence. The former method was a system of drainage which was made available to all of the property owners; that was the system that the city was bound to maintain in good repair and keep free from obstruction, and not the individual subterranean system used by plaintiff.

Plaintiff offered in evidence certain sections of the Colorado statutes pertaining to the establishment of sewerage systems and the maintenance of curbs and gutters, and also certain sections of the ordinances of the city of Trinidad pertaining to obtaining permits for a sidewalk, the establishing by the city engineer of curb lines, the vacating of a portion of Pine Street, and reserving to the city the right to use water lines, etc., theretofore constructed and maintained on any streets vacated with reservations of ingress and egress to make necessary repairs and replacements. Error is specified on the court's refusal to admit these sections of the statutes and ordinances in evidence. We do not believe

the trial court committed error in this refusal, but, assuming that it was error, we do not believe it was prejudicial as a reading of the sections of the law and ordinances offered does not appear to us to be detrimental to the city's position. The other specifications of error we believe are already covered in this opinion.

Judgment affirmed.