LARRY WRIGHT et al., Plaintiffs-Appellants, v. CITY OF ROCK ISLAND, Defendant-Appellee.

(No. 70-209;

Third District—August 30, 1971.

Theodore Jackson, of East Moline, for appellants.

Bernard Gillman, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

■■ In an action in the Circuit Court of Rock Island County, Larry Wright and Judith Wright, plaintiffs, sought to recover damages from the City of Rock Island for water damage to the residence owned by plaintiffs, which was allegedly caused by a diversion of surface water from its natural course and by the alleged failure to provide adequate drainage. The trial court allowed the motion for directed verdict by the City of Rock Island at the close of all the evidence. The sole question before this Court on appeal is whether the direction of verdict was proper. In determining this issue, it is necessary that we determine whether all of the evidence, viewed in its aspect most favorable to plaintiffs, so overwhelmingly favors defendant City of Rock Island that no contrary verdict based on such evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510; *Theesfeld v. Eilers*, 122 Ill.App.2d 97, 102.

From the record, it appears that the residence of plaintiffs was a 65-year old structure with brick basement walls. The residence is located on 44th Street which runs north and south, and the south side of the premises is adjacent to 10th Avenue which runs east and west. The direction

of both streets and their inclination are of such character that surface waters drain in the direction of plaintiffs' property which lies below the level of 10th Avenue. To the southwest of plaintiffs' property is a hilly, wooded area, and in the hills are three ravines which descend on a grade of about 6% in the direction of 10th Avenue, with the ravines meeting and terminating a short distance from the Avenue at a point near the intersection of 43rd Street and 10th Avenue, about one block above plaintiffs' premises. Earthen or rock dams (described as berms) varying in height from three to five feet, extend across the bottom of each ravine to slow the descent of surface water. Drains have also been connected to storm sewers upstream from each of the dams for the purpose of draining off water held off by the dams. Water flowing over the dams goes to 10th Avenue where still other drains and high curbings must be traversed and thence the water goes down the hill in the direction of plaintiff's premises. A total of 63.8 acres are drained over the course referred to.

On the night of July 17, 1969, there was a rainfall of 3.85 inches in the area, as a result of which water came over the dams and ran along 10th Avenue in such quantities that it flowed over the curbing and on to plaintiffs' land, where it washed out 26 feet of the basement wall. Nine days later, after the basement had been cleaned and the wall almost restored, a second rainfall occurred and the wall was washed out again. There is no evidence in the abstract of record to indicate the severity or extent of the second rainfall.

Plaintiff, Larry Wright, testified that, following the first rain, he went to the ravines to examine the drains above the dams and found them completely clogged with debris. All witnesses agreed that the surface water coming down the ravines would pick up debris which would descend to the bottom and cover the drains when the velocity of water was slowed by the dams. Both plaintiffs testified that they had cleared the drains on 10th Avenue after the rains and that they had complained of conditions to the city. Plaintiff Judith Wright who had resided on the premises for a number of years prior to her marriage, also stated that the water descending on 10th Avenue came onto their property only when the drains were clogged. Employees for the City of Rock Island testified that this area was a "trouble spot" where the drains were examined and cleared after each rainfall, and one such employee confirmed that after each of the rains involved, the drains in the ravines were found to be covered with debris.

An engineer who appeared as an expert witness for plaintiffs, testified that the openings in the grates of the drains were not large enough to permit debris to wash into the storm sewer and expressed an opinion

that other types of grates and drains (specified by him) would operate better under the conditions existing. He also stated that cities normally designed sewers in residential areas to take care of a "five year storm". A "five year storm" is described as being of such severity that it is only likely to occur twice within a ten year period. The engineer also stated that defendant's systems would be "lucky to handle a one year storm". By that he indicated that he meant a storm which would be so intense that it could only be expected to occur once a year. The foreman of the City Sewer Department, however, testified that the grates and drains suggested by the engineer had been tried in the city system and were found not to be as effective as those that were actually being used in the area of plaintiffs' land. The witness also testified that with the amount of rain which had fallen in the first rainfall referred to, the velocity of water coming down the ravines would have overwhelmed any normal system. Plaintiff Judith Wright had also stated in her testimony that she had lived in a house for many years and "never had a problem like this before".

On analysis of the evidence in the record, we must note that liability of defendant is asserted on the basis of the charges (1) that defendant diverted surface waters onto plaintiffs' land, and (2) that defendant failed to provide adequate drainage. We do not believe that plaintiffs' have sustained the burden of showing either of such conditions.

■■ While we recognize that a municipal corporation cannot, without incurring liability, divert surface water from its usual course and turn it onto private property (*City of Highland v. Auer*, 235 Ill.App. 327), there is a complete lack of proof that defendant in this case in any manner "diverted" surface water onto plaintiffs' premises. It is clear from the record and from the testimony of plaintiffs' own witnesses and others that the natural watercourse of surface waters descending from the ravines was down 10th Avenue in the direction of plaintiffs' land. No evidence indicated that 10th Avenue was so constructed as to increase the hazard of such naturally flowing waters. While the testimony of the engineer indicated that the dams in the ravines interfered with the flow of water it is clear that such "interference" was designed to collect the surface water before it reached 10th Avenue and did not cause the water passing over the dams be diverted from its natural course or thrust upon plaintiffs' property.

■■ As we view the evidence in its aspect most favorable to plaintiffs, we, likewise, cannot conclude that the evidence supports the charge that defendant should be liable to plaintiffs by reason of its failure to provide adequate drainage. Where a municipality provides ample sewers and drains to carry off all water likely to fall or accumulate under ordinary

conditions, the fact that the sewers and drains prove inadequate to carry off all the water from an extraordinary rain storm, does not subject a municipality to liability for damages caused by surplus water. *Burford v. Village of LaGrange,* 90 Ill.App.2d 210; I.L.P., Cities-Villages, etc., § 555 pp. 136-137.

██ The testimony of the engineer, presented by plaintiffs, failed to establish that the two storms referred to were ordinary or usual for the area, and, so far as the record is concerned, said storms appear to have been in the category of extraordinary storms or unusual in their severity. There was also direct testimony on behalf of defendant that the storms produced unusual volumes of rain. The testimony of plaintiff Judith Wright herself showed that the flooding was of such magnitude as had never occurred before during the years when she lived on the premises (from the time she was in the sixth grade). The record, therefore, supports the conclusion that the storms were actually extraordinary for the area.

Upon analysis of the entire record, it is apparent that the verdict was properly directed for defendant in this cause. While plaintiffs have advanced other arguments in this cause, the issues raised thereby are not pertinent to a determination of the cause and it is unnecessary to extend this opinion in discussing such points. On the basis of the evidence presented, therefore, it is apparent that we would not be justified in finding that the granting of defendant's motion for a directed verdict was not proper.

The judgment of the Circuit Court of Rock Island County will, accordingly, be affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.