515 So.2d 353 (1987)
Fletcher SLEMP and Dora Slemp, Appellants,
v.
CITY OF NORTH MIAMI, Appellee.
No. 85-2796.
District Court of Appeal of Florida, Third District.
November 10, 1987.
*354 Pepe & Nemire and Thomas F. Pepe, Coral Gables, for appellants.
Simon, Schindler, Hurst & Sandberg and Thomas M. Pflaum, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON REHEARING EN BANC
HENDRY, Judge.
We have taken this case en banc to consider appellee City of North Miami's argument that the original panel of this court should have affirmed the trial court's granting of a summary judgment based upon the doctrine of sovereign tort immunity. We substitute the following discussion for the original opinion published at 11 F.L.W. 1489.
This is an appeal by the plaintiffs below, Fletcher and Dora Slemp, from an adverse summary judgment terminating their claim against the City of North Miami (City), based upon the doctrine of sovereign immunity. For reasons more fully developed below, we affirm.
This case arose as the result of the flooding of the Slemps' home in the City of North Miami due to heavy rains on June 23, 1982.[1] The City had previously installed a storm sewer pump system which was designed to alleviate flooding problems in the area. The record reflects that the system, which was supposed to operate automatically, had to be operated manually on numerous occasions because it was not functioning properly. However, because the City kept no records, it was not certain whether the pump was operating properly on the date in question.
The Slemps brought an action against the City claiming that the City's negligent maintenance and operation of the pump system caused their home to be flooded. They alleged that their home flooded because the City's storm sewer pipes failed to drain off rainwater after a rainstorm. The City moved for summary judgment, and the trial court granted the motion and entered summary judgment on the basis of sovereign immunity.
The issue on appeal is whether the City is immune from suit, as a matter of law, under the doctrine of sovereign immunity.
The City contends that it is immune from suit as the City does not owe any statutory or common law duty to the Slemps to provide a storm sewer system. See Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985). Thus, it argues that since it had no duty to provide a storm sewer system, it could not be liable even if it was negligent in maintaining the system.
This case is indistinguishable from the "fire protection" or "crime prevention" cases cited by the City, wherein the governmental entity was held immune from suit. City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985) (supreme court held *355 that no common law duty existed to provide fire protection and hence no tort liability could arise even though the negligence occurred on an operational level); Reddish v. Smith, 468 So.2d 929 (Fla. 1985) (department of corrections held immune from liability where it had negligently classified a prisoner, allowing him to escape and injure the plaintiff); Everton v. Willard, 468 So.2d 936 (Fla. 1985) (tort liability does not arise when a governmental entity negligently allows a drunk driver to injure another person, even if the governmental entity's negligence occurs at the operational level).
In the case at bar, the Slemps alleged that the city storm sewer system, due to negligent maintenance, did not function and thus failed to protect the Slemps from a rainstorm. They contend that the City, under the facts of this case, has the same liability as an individual for the negligent maintenance of its property which results in harm to a plaintiff. We cannot agree.
As noted in Trianon, 468 So.2d at 919:
How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of goverance, for which there has never been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires. This same discretionary power to enforce compliance with the law is given to regulatory officials such as building inspectors, fire department inspectors, health department inspectors, elevator inspectors, hotel inspectors, environmental inspectors and marine patrol officers.
On the other hand, however, once a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property. Trianon, 468 So.2d at 921.
Therefore, if the Slemps had alleged that the City's storm sewer system itself had flooded their home, for example, by backwashing water into their home, liability would arise under Trianon, since the City would have had a common law duty to properly maintain and operate the storm sewer system so that it would not have caused them damage. See Butler v. Sarasota County, 501 So.2d 579 (Fla. 1986) (public owner did not create the specific dangerous condition but did create a designated area where the dangerous condition existed); Department of Transp. v. Webb, 438 So.2d 780 (Fla. 1983) (department's negligent failure to maintain railroad crossing and failure to warn motorists of a known dangerous condition constituted negligent, tortious conduct); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982) (governmental entity has a duty to warn of or correct dangerous conditions that the entity created, and knew to be dangerous, and which were not readily apparent to those persons who might sustain injury as a result of them).
However, in this instance, the Slemps merely alleged that the City was liable for the flooding in 1982 because it breached its duty to properly maintain its sewage pumps "so as not to cause excess water to gather in the streets."
There has never been a common law duty of care to individual property owners to protect against flooding due to a natural occurrence. See Baldwin v. City of Overland Park, 205 Kan. 1, 468 P.2d 168, 173 (1970) (court held that the city's failure to maintain a drainage system was not actionable); Board of Trustees v. Chyle, 256 Ky. 283, 75 S.W.2d 1039 (1934) (city could not be liable for negligence in its efforts to control surface water unless it artifically collected the surface water and diverted it onto plaintiff's property); Wright v. City of Rock Island, 133 Ill. App.2d 763, 273 N.E.2d 83 (1971) (city not liable for failure to successfully drain off heavy rainfall.)
*356 Moreover, we can find no statutory duty of care upon which to base governmental liability for such conduct. See, e.g., City of Daytona Beach, 469 So.2d at 122 (there has never been a common law nor statutory duty of care to individual owners to provide fire protection services); Trianon, 468 So.2d at 917 (for there to be governmental tort liability, there must either be an underlying common law or statutory duty of care with respect to the alleged negligent conduct).
The decision to install pumps of limited capacity was a planning level decision for which sovereign immunity applies. See, e.g., Trianon, 468 So.2d at 912; Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). The drainage of surface water by a governmental entity is an inherent police function which is immune from liability. See Hutchinson v. City of Lakewood, 125 Ohio St. 100, 180 N.E. 643 (1932) (surface water drainage is a fundamental police function since such services are established for the express purpose of preserving the public health).
Under the rule enunciated in Trianon, there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions [of enforcing the laws and protecting the public safety] because there has never been a common law duty of care with respect to these ... police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care.
468 So.2d at 921.
Therefore, we find that under the facts of the case at bar, the City is entitled to judgment as a matter of law based upon the doctrine of sovereign tort immunity. For the foregoing reasons and based upon the authorities cited, the final judgment appealed is affirmed.
Due to our holding, we do not reach the other issue on appeal.
Affirmed.[2]
SCHWARTZ, C.J., and BARKDULL, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ., concur.
SCHWARTZ, Chief Judge (specially concurring).
I think that the authorities Judge Nesbitt relies upon to support the view that liability arises when a governmental entity assumes a duty and then negligently discharges it invariably involve actual or implied reliance upon that performance or injury affirmatively caused by it.[1]Feldstein v. City of Key West, 512 So.2d 217, 219-20 (Fla. 3d DCA 1987). Thus, if the Slemps had built or bought their home in the particular location or refrained from taking steps to protect it from storm water because of the reasonable belief that the city would take care of the overflow; or if the city had itself caused the damage to the home, I would agree with reversal. See Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 923 (Fla. 1985) (McDonald, J., concurring). But none of this is true in this case. The only thing the city allegedly did wrong was fail to remove what nature put there. Since there is no indication that, if the city had done nothing at all, the Slemps would have been in any different position, I thoroughly agree with Judge Hendry's comprehensive opinion that there was no breach of a legally cognizable "duty." See also McWilliams v. Metropolitan Dade County, 510 So.2d 1240 (Fla. 3d DCA 1987); City of *357 Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985).
BARKDULL, DANIEL S. PEARSON and JORGENSON, JJ., concur.
NESBITT, Judge (dissenting):
I respectfully dissent. While recognizing that the City has "a common law duty to properly maintain and operate the storm sewer system,"[1] the majority limits this duty to cases in which the system itself creates a dangerous condition which causes injury. It is true that the creation of a dangerous condition by a governmental entity gives rise to a duty of care. See Butler v. Sarasota County, 501 So.2d 579 (Fla. 1986); Department of Transp. v. Webb, 438 So.2d 780 (Fla. 1983); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982). It is also true, however, that a governmental entity's liability is not limited to the creation of dangerous conditions, but that such entities are "liable for tort claims in the same manner and to the same extent as a private individual under like circumstances." § 768.28, Fla. Stat. (1985); see generally Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985).
Although acts which are inherent in the act of governing can never give rise to a duty of care, governmental acts which either are an exercise of capital improvement and property control functions or provide professional, educational, and general services to the public may give rise to a duty. Trianon, 468 So.2d at 919-21. The decision to provide a water drainage system, as well as the decision concerning the capacity of the system, is an exercise of quasi-judicial power, Johnston v. District of Columbia, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75 (1886), which is inherent in the act of governing. Cf. Trianon, 468 So.2d at 919-20 (exercise of discretionary power vested in governmental officials for the protection of the public safety is inherent in the act of governing). Thus, I would agree with the majority that "[t]he [City's] decision to install pumps of limited capacity was a planning level decision for which sovereign immunity applies."[2] However, I do not believe that our analysis of this case should end there, since it is not contended that the damage was caused by the decision to install pumps with limited capacity, but rather that the negligent maintenance of pumps which were already in place caused the damage. "[O]nce a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property. See ... City of Tallahassee v. Elliott, 326 So.2d 256 (Fla. 1st DCA 1975), cert. denied, 344 So.2d 324 (Fla. 1977) (maintenance of drainage system)." Trianon, 468 So.2d at 920-21; accord Avallone v. Board of County Comm'rs of Citrus County, 493 So.2d 1002 (Fla. 1986). Therefore, having undertaken to operate the sewer system, the City owed a duty to maintain the pumps in a non-negligent manner. See, e.g., City of New Smyrna Beach Utilities Comm'n v. McWhorter, 418 So.2d 261 (Fla. 1982) (recognizing that city may be liable for negligent maintenance of sewer system, even though doctrine of res ipsa loquitor was inapplicable); see Bray v. City of Winter Garden, 40 So.2d 459 (Fla. 1949); City of Tampa v. Easton, 145 Fla. 188, 198 So. 753 (1940); Elliott, 326 So.2d at 256; cf. City of Tucson v. Apache Motors, 74 Ariz. 98, 245 P.2d 255 (1952) (having undertaken to provide culverts, city liable for insufficiency due to negligent construction); Malvernia Inv. Co. v. City of Trinidad, 123 Colo. 394, 229 P.2d 945 (1951) (en banc) (city liable for maintenance of sewer); Scholbrock v. City of New Hampton, 368 N.W.2d 195 (Iowa 1985) (city liable for negligent service of drainage system); Kidson v. City of Bangor, 99 Me. 139, 58 A. 900 (1904) (city had duty to maintain sewer); Green v. Town of West Springfield, 323 Mass. 335, 81 N.E.2d 819 (1948) (town liable for negligent maintenance of sewer); Clay v. City of Jersey City, 84 N.J. Super. 9, 200 A.2d 787 (1964) (duty to maintain sewer); State of New Mexico ex rel. City *358 of Albuquerque v. Lavender, 69 N.M. 220, 365 P.2d 652 (1961) (city liable for proprietary act of maintaining sewer); Doud v. City of Cincinnati, 152 Ohio St. 132, 87 N.E.2d 243 (1949) (same); Oklahoma City v. Romano, 433 P.2d 924 (Okla. 1967) (after being on notice of problem, city liable for negligent maintenance of sewer); Strauch v. City of Scranton, 353 Pa. 10, 44 A.2d 258 (1945) (city may be liable for negligent maintenance of sewer and drainage systems); Rotella v. McGovern, 109 R.I. 529, 288 A.2d 258 (1972) (operation of sewer is proprietary act, rather than governmental and gives rise to a duty); Fuller v. City of Rutland, 122 Vt. 284, 171 A.2d 58 (1961) (same); Sigurdson v. City of Seattle, 48 Wash.2d 155, 292 P.2d 214 (1956) (same).
The majority notes that "[t]here has never been a common law duty of care to individual property owners to protect against flooding due to a natural occurrence." While this may be true, the majority fails to consider that a duty may arise from an individual's affirmative actions, such as the City's operation of the sewer system. Once an individual acts in favor of providing protection from flooding, the individual assumes a responsibility to do so in a non-negligent manner. Apache Motors, 74 Ariz. at 98, 245 P.2d at 255; Gellenthin v. J. & D., Inc., 38 N.J. 341, 184 A.2d 857 (1962); War v. Mazzarella, 137 N.J.L. 736, 61 A.2d 284 (1948); Sgarlata v. Schenectady, 77 Misc.2d 481, 353 N.Y.S.2d 603 (1974); see also Bauer v. County of Ventura, 45 Cal.2d 276, 289 P.2d 1 (1955); Gumz v. Bejes, 163 Ind. App. 55, 321 N.E.2d 851 (1975); Baum v. Scotts Bluff County, 172 Neb. 225, 109 N.W.2d 295 (1961). Therefore, I would hold that once the City installed the sewer pumps it assumed the duty to maintain those pumps in proper order to prevent the expected rains from causing damage to surrounding property. See 18 E. McQuillin, Municipal Corporations §§ 53.123-.124 (3d revised ed. 1984) (and cases cited therein).[3]
I would find that the operation of sewer pumps is not an inherent act of governing, but is an operational function, and that an individual situated similarly to the City would owe a duty of care to the Slemps. Furthermore, since there exist disputed issues of fact concerning the proximate cause of the Slemps' injuries, as well as City's actions in the present case, I would hold that this case should have been submitted to a jury for resolution. Consequently, I would reverse the judgment under review.
HUBBART and BASKIN, JJ., concur.
NOTES
[1] The records maintained by the Public Works Department of the City reflected that the City received 5.02 inches of rainfall on that day, and a total of over 15 inches of rain for the week ending June 23, 1982.
[2] Pursuant to Article V, Section 3(b), Florida Constitution (1980), we certify that this decision passes upon a question of great public importance concerning the doctrine of sovereign tort immunity.
[1] Of course, if one is injured by affirmative misfeasance by the government, as when he is struck by a vehicle operated in the course of a governmental function, he is essentially "relying" on the fact that his physical well-being will remain unharmed by negligent conduct. A philosophical case could be made therefore for the proposition that all tort liability arises out of a detrimental reliance and thus in the broadest sense "estoppel." Restatement (Second) of Torts §§ 323, 324A (1965).
[1] Majority opinion at p. 355.
[2] Majority opinion p. 355.
[3] The City maintains that the extraordinary rainfall is to blame for the damage caused to the Slemps' home, since the pumps, even if working at full capacity, could not have prevented the damage. This is a question of proximate cause, however, and if the Slemps fail to establish that the negligence of the City is the legal cause of their damages, then they will not be entitled to damages. This question does not enter into the problem of the City's claimed immunity. Furthermore, because there are disputed issues of fact with regard to this question, I would hold that the question should have been submitted to a jury.