545 So.2d 256 (1989)
Fletcher SLEMP and Dora Slemp, Petitioners,
v.
CITY OF NORTH MIAMI, Respondent.
No. 71549.
Supreme Court of Florida.
June 1, 1989.
Rehearing Denied July 21, 1989.
*257 Thomas F. Pepe of Pepe & Nemire, P.A., Coral Gables, for petitioners.
Thomas M. Pflaum and Pedro P. Echarte, Jr. of Simon, Schindler, Hurst & Sandberg, Miami, for respondent.
SHAW, Justice.
We have for review Slemp v. City of North Miami, 515 So.2d 353 (Fla. 3d DCA 1987), in which the district court certified its decision as passing upon a question of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash the decision of the district court.
This case presents the following issue: Can a city be held liable for flooding damages that result from the allegedly negligent maintenance of a storm sewer pump system it constructed? We hold that it can.
The City of North Miami installed a storm sewer pump system to counter periodic flooding. The Slemps' property was damaged as a result of flooding following a rainstorm and they sued the city, alleging in their complaint that the city had
failed to maintain, operate and/or control the said pumps so that they would work properly and drain off the excess waters so as not to cause flooding in the area... .
... .
... [and] failed to operate, control and/or manage the pumping stations so as to keep the streets and residential areas free from excess water and from flooding.
The trial court entered summary judgment for the city premised upon the theory that the city enjoyed sovereign immunity. The district court affirmed on rehearing en banc.
The district court recognized that had the Slemps alleged that the storm sewer system itself caused damage, such as by backwashing water into their home, then possible liability would have arisen under this Court's ruling in Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985), since the city has a common law duty to maintain and operate the system so that it will not affirmatively cause property damage. The court pointed out that the Slemps had merely alleged that the city breached its duty to properly maintain the pumps "so as not to cause excess water to gather in the streets." Slemp, 515 So.2d at 355. According to the court, the city owed no statutory or common law duty of care to individual property owners to protect against flooding due to natural occurrences; consequently, the city was not liable.
The abiding test for determining whether a government entity has sovereign immunity for its tortious acts is the operational/planning formula set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). Decisions relating to "certain policy-making, planning or judgmental governmental functions" are not subject to the legislature's waiver of sovereign immunity as expressed in section 768.28, Florida Statutes (1985). Commercial Carrier, 371 So.2d at 1020. Government entities are not immune from liability for their torts arising from operational functions. In such cases where immunity does not apply, traditional tort principles govern.
In the instant case, the city's alleged failure to maintain and operate its pumps properly is an operational level activity and is thus subject to traditional tort analysis. See, e.g., Commercial Carrier (failure to maintain traffic signal light and "STOP" signal on pavement are operational level activities). We agree with the wellreasoned dissent of Judge Nesbitt in the *258 court below that the issue does not concern whether the city, in the abstract, had a duty to protect individual property owners from flooding due to natural causes. Once the city has undertaken to provide such protection, by building a storm sewer pump system, for example, it assumes the responsibility to do so with reasonable care. The city did install the pump system, and thereby assumed the duty to maintain and operate the system so that it would properly drain off expected excess water and prevent flooding. If the city negligently fails to properly maintain or operate the system, it can be held liable for damage caused by that failure.
The Slemp's complaint sufficiently alleged that it was the city's failure to properly maintain or operate the pumps that caused the damage to their property. The city, on the other hand, contends that extraordinary rainfall caused the damage, and that even properly operating pumps could not have prevented it. The question of the proximate cause of the damage is one of fact, and should have been submitted to a jury. Consequently, we quash the decision of the district court below and remand to the trial court.
It is so ordered.
EHRLICH, C.J., and BARKETT and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion, in which GRIMES, J., concurs.
McDONALD, J., dissents with an opinion, in which OVERTON and GRIMES, JJ., concur.
OVERTON, Justice, dissenting.
I fully concur with Justice McDonald's dissenting opinion. The majority places on cities and counties a duty to insure private property owners from water damage when there is a government-maintained drainage system serving their property. It requires local governmental entities to pay damages even though the damage was less than it would have been had the drainage system not been there. Slemp made no allegation in his complaint that this damage would not have occurred if the drainage system had not been installed. The allegation is based, instead, on the claim that the city "failed to operate, control and/or manage the pumping station so as to keep the streets and residential areas free from the excess water and from flooding."
The fact that a drainage system does not take care of all the water should not mean that an adjacent property owner is entitled to damages. The property owner should be entitled to damages only when the drainage system caused the damage and that damage would not have occurred had the drainage system not been there. To say otherwise requires the taxpaying citizens of the local governmental entity, both property owners and non-property owners to pay for flood damage. I see no reason why the taxpayers of cities and counties should be insurers of individual property owners or developers in these circumstances. To hold these local governmental entities responsible for not operating a drainage system as efficiently as possible places an impossible fiscal burden on them.
This is bad policy without any legal justification. Unless the legislature addresses this issue, cities and counties will refuse to maintain and operate drainage systems in new developments. More importantly, it could have an effect on how these same governmental entities become involved with new low-income housing developments. The result could be that the rich will have proper private drainage systems while the poor will have none.
I agree entirely with Judge Hendry's majority opinion, which is best summarized by Chief Judge Schwartz:
The only thing the city allegedly did wrong was fail to remove what nature put there. Since there is no indication that, if the city had done nothing at all, the Slemps would have been in any different position,... there was no breach of a legally cognizable "duty."
Slemp v. City of North Miami, 515 So.2d 353, 356-57 (Fla. 3d DCA 1987) (Schwartz, J., concurring) (citations omitted).
GRIMES, J., concurs.
*259 McDONALD, Justice, dissenting.
We should approve the result reached by the district court of appeal. The Slemps have no cause of action against the City of North Miami predicated on their pleadings in this case.
The Slemps' property was damaged as a result of flooding following a rainstorm. The City of North Miami had previously installed a storm sewer pump system in the area to counter periodic flooding. The Slemps sued the city, alleging in their complaint that the city had
failed to maintain, operate and/or control the said pumps so that they would work properly and drain off the excess waters so as not to cause flooding in the area... .
... .
... [and] failed to operate, control and/or manage the pumping stations so as to keep the streets and residential areas free from excess water and from flooding.
Tort liability is predicated on a breach of a duty to the injured party.[1] All parties have a general duty to refrain from causing harm to others. No claim is made in the pleadings that the city caused damage to the Slemps.[2] When a claim is predicated on a failure to protect a person from harm caused by an outside force (in this case the torrential rain), or by a third party, there should be a special relationship between the harmed party and the entity from which the party seeks redress, or at least a reasonable reliance on the efforts to be protected before liability attaches.
Judge Schwartz, in his special concurring opinion denying relief, properly notes:
I think that the authorities Judge Nesbitt relies upon to support the view that liability arises when a governmental entity assumes a duty and then negligently discharges it invariably involve actual or implied reliance upon that performance or injury affirmatively caused by it.[1] Feldstein v. City of Key West, 512 So.2d 217, 219-20 (Fla. 3d DCA 1987). Thus, if the Slemps had built or bought their home in the particular location or refrained from taking steps to protect it from storm water because of the reasonable belief that the city would take care of the overflow; or if the city had itself caused the damage to the home, I would agree with reversal. See Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 923 (Fla. 1985) (McDonald, J., concurring). But none of this is true in this case. The only thing the city allegedly did wrong was fail to remove what nature put there. Since there is no indication that, if the city had done nothing at all, the Slemps would have been in any different position, I thoroughly agree with Judge Hendry's comprehensive opinion that there was no breach of a legally cognizable "duty."
[1] Of course, if one is injured by affirmative misfeasance by the government, as when he is struck by a vehicle operated in the course of a governmental function, he is essentially "relying" on the fact that his physical well-being will remain unharmed by negligent conduct. A philosophical case could be made therefore for the proposition that all tort liability arises out of a detrimental reliance and thus in the broadest sense "estoppel." Restatement (Second) of Torts §§ 323, 324A (1965).
Slemp v. City of North Miami, 515 So.2d 353, 356 (Fla. 3d DCA 1987).
The majority predicates liability on the doctrine that, even though there may be no initial duty, once a duty is assumed the party must not be negligent in the performance of it. This is appropriate in rescue situations or when a special relationship exists between the parties. It has no application in governing or the furnishing of city services to the public. From a liability standpoint, a city would be better off if it left its citizens to the mercy of the common elements, furnished no police or fire protection, and avoided the performance of myriad other governmental services. A better policy would be to encourage such governmental activities and refrain from imposing *260 liability when these acts do not directly cause injury or where no special relationship exists.
OVERTON and GRIMES, JJ., concur.
NOTES
[1] No claim is made in this case of a contractual duty by the city to the Slemps.
[2] In their appellate brief the Slemps urge that the construction of streets, combined with the pumps' failure, caused the flooding. No such allegations appear in the pleadings.